(No. 14480.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, by Edward J. Brundage, Attorney General, Appellant, *vs.* FRANCIS P. BRADY *et al.* Appellees.

*Opinion filed April 19, 1922.*

1. ELECTIONS—*Primary Election act of 1910 construed.* The Primary Election act of 1910 distinguishes between State or municipal officers and officers of political parties, and the act does not create the offices of precinct, ward and district committeemen, but merely recognizes the existence of the managing committees of the different political parties and regulates the manner in·which the members of these committees shall be selected and how their powers shall be exercised.

2. SAME—*legislature cannot deprive legal voters of the right to nominate candidates.* The State, as a sovereignty, does not nominate candidates for public office, and although the manner in which the right to nominate candidates shall be exercised may be regulated by general law, the legislature cannot deprive the individual member of a political party of his right to nominate candidates or to participate in a free and equal election secured to him by the bill of rights.

3. SAME—*committeemen of political parties are not public officers.* Committeemen of political parties elected under the Primary Election act of 1910 are not public officers as they do not represent the State nor the people at large but only the members of the respective political parties, and the people are not required to vote for the candidates nominated.

4. OFFICES—*when individuals are not public officers—quo warranto.* The fact that the General Assembly may by law confer certain powers on individuals and require of them the performance of certain duties does not necessarily make such individuals public officers, whose right to office may be tested by *quo warranto.*

5. SAME—*constitutional definition of an office applies only to State officers.* The definition of an office in section 24 of article 5 of the constitution applies only to State officers.

6. SAME—*what constitutes a public office.* The most important characteristic of a public office is that it involves a delegation to the officer of some of the functions of the government, some portion of the sovereignty of the State, either legislative, executive or judicial, which attaches for the time being to the officer, to be exercised by him for the benefit of the public, and unless the powers conferred by the act creating the office are of this nature the individual filling the office is not a public officer.

7. QUO WARRANTO—*titles to offices of committeemen of political party cannot be tried by quo warranto.* The titles to the offices of precinct, ward and district committeemen of a political party do not involve the franchise and prerogatives of the State and cannot be tried by a proceeding in *quo warranto* by the intervention of the Attorney General in his official capacity.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. F. R. DEYOUNG, Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, (FREDERICK A. BROWN, of counsel,) for appellant.

SAMUEL A. ETTELSON, GEORGE B. GILLESPIE, JAMES W. BREEN, and CHESTER E. CLEVELAND, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This appeal is prosecuted to review the judgment of the Appellate Court for the First District confirming the judgment of the circuit court of Cook county sustaining the general demurrers of appellees to an information in the nature of *quo warranto* filed by the Attorney General, charging

302—37

that appellees are usurping and unlawfully holding and executing the offices of precinct, ward and district committeemen of the republican party in Cook county.

Appellees were elected at the primary election held on April 13, 1920, and it is charged that they were elected pursuant to the provisions of the Primary Election act of 1919, (Laws of 1919, p. 475, *et seq.*) which was subsequently declared to be unconstitutional. (*People* v. *Fox,* 294 Ill. 263.) There are several questions presented by the assignments of error, but holding, as we do, that appellees are not public officers and that their right to serve the members of the political party who selected them can not be tested by *quo warranto,* it will be unnecessary to consider any other question.

The Primary Election act of 1919 being void, no office could be created by that act, (*People* v. *Knopf,* 183 Ill. 410,) and it will be necessary to refer to the Primary Election law which was in force and effect at the time the election of April 13, 1920, was held and at the time the information in this cause was filed, in order to determine whether committeemen of political parties are public officers. This was the Primary act of 1910 and amendments thereto. (Harker's Stat. p. 1952, *et seq.*) This act clearly distinguishes between State and municipal officers who exercise some portion of the sovereign power of the State and officers of political parties who represent those who affiliate themselves with the respective parties. Section 1 of the act provides for the nomination of candidates for certain elective State and municipal offices and for the election of precinct, ward and State central committeemen by all political parties. Section 4 of the act defines certain words and phrases used in the act. It defines the words "county officer," "city officer" and "town officer" as officers to be voted for by the qualified electors of the entire county, the entire city and the entire town, respectively. Precinct, ward and district committeemen are not in any section of the act

referred to as officers. The committeemen are not nomi-
nated at the primary election, but they are elected to serve
their respective political parties as managers of the cam-
paign conducted subsequent to the primary to elect the can-
didates nominated by the respective political parties at the
regular election held to select the officers of the State and
its subdivisions. The act plainly indicates that the General
Assembly was not creating new public officers to whom it
delegated part of the sovereign power of the State, but it
was simply recognizing the existence of the managing com-
mittees of the several political parties and regulating the
manner in which the members of these committees should
be selected and the manner in which the powers long exer-
cised by such committees should be exercised. Paragraph 6
of section 9 specifically provides that each committee and its
officers shall have the powers usually exercised by such com-
mittees and by the officers thereof, not inconsistent with the
provisions of the act. Paragraph 7 of the same section pro-
vides that "the various political party committees now in
existence are hereby recognized, and shall exercise the pow-
ers and perform the duties herein prescribed until commit-
teemen are chosen in accordance with the provisions of this
act." Among the duties prescribed is the duty to meet and
organize as a county convention, and that such county con-
vention in Cook county shall nominate the candidates of
the respective political parties for the offices of judge of
the circuit court and judge of the superior court. (Hark-
er's Stat. p. 1991.)

Appellant contends that these committeemen are public
officers because the statute authorizes them to exercise cer-
tain powers and requires them to perform certain duties.
The State, as a sovereignty, does not nominate candidates
for public office. The right to nominate candidates for pub-
lic office is vested in the legal voters of the State, and the
General Assembly cannot deprive them of this right. The
manner in which this right to nominate candidates shall be

exercised may be regulated by general law so long as the regulations do not deprive the individual member of a political party of his right to participate in a free and equal election secured to him by the bill of rights. For the purpose of nominating candidates the legal voters may associate themselves with a political party and participate in the nomination of candidates as candidates of the respective parties, or they may organize themselves into a group for other than partisan reasons and nominate their candidates by petition. The State is interested in the manner in which this right to nominate candidates shall be exercised, and a political party or other group renders a great service to the State when the right is honestly and conscientiously exercised. The State is also interested in the manner in which the individual voter shall exercise his right to vote, and the voter serves his State well when he exercises the right to vote, if he exercises it honestly and conscientiously. The Primary Election act did not confer the power to nominate candidates for office on members or representatives of members of political parties. It simply recognized the right already existing in them and prescribed the manner in which that right should be exercised. This did not make the committeemen and officers of political parties public officers any more than laws regulating the manner of exercising the right to vote makes each voter a public officer. The county convention of the democratic party in Cook county nominates candidates of the democratic party for judges of the circuit court and the superior court, and the county convention of the republican party nominates the republican candidates. The committeemen composing these county conventions do not represent the public at large nor do they exercise any of the sovereign power of the State. They represent the members of the respective political parties and are accountable to them, alone. The members of these conventions may be influenced to nominate candidates for sectional, racial or other reasons, and may thereby di-

vide our citizens into groups and appeal to selfish and disloyal interests for party gain. Such conduct is un-American and threatens the continuance of our form of government by shaking to the very foundation the fundamental principles on which it is founded, but no one will contend that the members of such conventions could be prosecuted for malfeasance in office because they had not performed their duty well. They are responsible, alone, to the membership of their respective parties, and their punishment for misconduct in office must come from party discipline. They do not represent the State nor the people at large, for the reason that the people are not required to vote for the candidates that the parties present. The individual voter may choose from the candidates of all the political parties such persons as he or she thinks will best fill the offices to be filled, and if any considerable number of the voters feel that their interests have been betrayed by the political managers of the respective political parties they may nominate by petition candidates of their own choosing. The fact that the General Assembly may by law confer certain powers on individuals and require of them the performance of certain duties does not necessarily make such individuals public officers. If it did, then railroad conductors, inn-keepers, physicians, and many other business and professional men, would be public officers and their right to engage in their several vocations could be tested by *quo warranto*. It is probably unnecessary to say that it is very unlikely that anyone will ever contend that persons following these lines of human endeavor are public officers.

Appellant contends that the position held by appellees comes within the definition of an office, as defined by section 24 of article 5 of the constitution, which reads: "An office is a public position created by the constitution or law, continuing during the pleasure of the appointing power or for a fixed time, with a successor elected or appointed." It is sufficient to say that this definition applies only to State

officers. . (*People* v. *Loeffler,* 175 Ill. 585.) The definition is broad enough to embrace within its terms all local municipal officers, but it has no reference to them. It serves as a guide to the General Assembly in making its appropriations, so that it can determine who are officers of the State and who are employees, and thereby comply with section 16 of article 4. (*Fergus* v. *Russel,* 270 Ill. 304.) Section 24 no doubt serves other purposes, but whatever purpose it serves it does not apply to the position of appellees.

The position of committeeman lacks many of the indicia of public office. The position does not carry with it any salary, fees or emoluments, and the person elected to the position is not required to give bond or to subscribe to the oath required by section 25 of article 5 of the constitution. These are mere incidents of office and form no part of it and their presence is therefore not necessary to the determination of the question, but the absence of all these common characteristics of public office indicates that the General Assembly did not consider that it was surrendering to these officers of political parties any of the sovereign powers of the State. The most important characteristic of an office is that it involves a delegation to the officer of some of the solemn functions of government to be exercised by him for the benefit of the public. Some portion of the sovereignty of the State, either legislative, executive or judicial, attaches for the time being to the officer, to be exercised for the public benefit. Unless the powers conferred by the act creating the office are of this nature the individual filling the office is not a public officer.

In *Rouse* v. *Thompson,* 228 Ill. 522, this court said: "The several county central committees of the several political parties in this State, as such, are not created by any statute. They in no way represent the State or any political division thereof, and cannot be classified as belonging to either the legislative, executive or judicial departments of the State. They represent only a political party, and that

party may only represent a vote equal to two per cent of the vote cast for president at the preceding presidential election. Such committees are not, therefore, officers of the State but are the representatives of voluntary associations." And again: "The county central committees of political parties, where they exist, as they do in this State, as the representatives of purely voluntary organizations, cannot be said to be 'public agencies,' as they represent, not the State or any political division or department thereof, but a political party which may be composed of only an inconsiderable portion of the people."

The question presented by this appeal has been before the courts of many other States, and without exception these courts have found that party officers are not public officers and that *quo warranto* is not a proper proceeding by which to try the title to such an office. (9 R. C. L. 1088; *Attorney General* v. *Drohan,* 169 Mass. 534, 48 N. E. 279; *Greenough* v. *Lucey,* 28 R. I. 230, 66 Atl. 300; *Attorney General* v. *Barry,* 74 N. H. 353, 68 Atl. 192; *Usilton* v. *Bramble,* 117 Md. 10, 82 Atl. 661; *State* v. *McLean,* (N. D.) 159 N. W. 847.) The authorities on which appellant relies do not hold that appellees are public officers and are not in conflict with the conclusion we have reached. This case does not present a case where two rivals are contesting for the same office, each claiming to have been properly elected, but it presents a questioned authority to hold an office with no rival claimant. The franchise and prerogatives of the State are not here involved, and the Attorney General, in his official capacity, cannot intervene in cases of this character, for the reason that the public is not interested in what individual holds office in a political party.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*