Morris *v.* Peters.

No. 16111.    FEBRUARY 23, 1948.

*William T. Dean, E. D. Rivers, Adie N. Durden, Charles L. Gowen, Robert B. Troutman, Fulcher & Fulcher,* and *Hull, Willingham, Towill & Norman,* for plaintiff in error.

*Charles J. Bloch, B. D. Murphy, C. Baxter Jones, Sam D. Hewlett, Alex McLennan, Harris Chance & McCracken,* and *W. S. Mann,* contra.

*Smith, Kilpatrick, Cody, Rogers & McClatchey,* and *Harry S. Baxter,* as amici curiae.

CANDLER, Justice. (After stating the foregoing facts.) ■ As shown by the preceding statement, James S. Peters presented to the judge of the superior court an application for leave to file an information in the nature of a quo warranto to inquire into the right of William S. Morris to hold the office and exercise the duties of Chairman of the Georgia State Democratic Executive Committee, Peters himself claiming the right and title to such office. For brevity, all of this may simply be referred to as a petition by Peters for the writ of quo warranto to recover the office from Morris. In such a case the party suing is usually referred to as the relator, and the party sued as the respondent, and we shall generally so refer to them in this opinion.

As to quo warranto, the Code, § 64-201, provides: "The writ of quo warranto may issue to inquire into the right of any person to any public office the duties of which he is in fact discharging, but must be granted at the suit of some person either claiming the office or interested therein."

The respondent filed a general demurrer to the petition, urging several reasons why the petition should be dismissed as failing to state a cause of action. The court overruled the demurrer, and this is one of the rulings which he assigns as error in the bill of exceptions.

One of the contentions urged by the respondent, now plaintiff in error, is that the office or position in question, namely, Chairman of the Georgia State Democratic Executive Committee, is not a public office so as to come within the remedy of quo warranto.

A public office is one created by the Constitution, by some statute, or by municipal ordinance passed in pursuance of legislative authority. *Benson* v. *Hines,* 166 *Ga.* 781, 783 (144 S. E. 287). In *McDuffie* v. *Perkerson,* 178 *Ga.* 230, 235 (173

S. E. 151, 91 A. L. R. 1002), this court quoted with approval from Wyman's Administrative Law, 163, § 44, as follows: "A public office, then, is the right, authority, and duty conferred by law by which for a given period, either fixed by law or through the pleasure of the creating power of government, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The warrant to exercise powers is conferred, not by a contract, but by the law. It finds its source and limitation in some act of expression of governmental power. Oath, salary, operation, scope of duties, are signs of the official status; but no one is essential. The essential thing is that in some way or other the officer is identified with the government." It was held in that case, for reasons stated in the opinion, that a grand juror was not a public officer.

There is no contention made in the present case that the office in question is a public office created by the Constitution or by the express terms of any statute. The relator contends that it is a public office arising by necessary implication from legislative acts which impose upon the chairman of any political party which holds a primary election the duty to perform certain acts. It would too greatly prolong this opinion to attempt to quote or state the substance of all of these laws. They are found in the Code and the published acts, and any one interested may see them there. It will be noticed, however, that these statutes do not anywhere refer to any particular political party. The Code, § 34-3212, being a part of the Neill Primary Act of 1917, refers in general terms to every political party holding a primary. In this same section reference is made to political conventions, chairman or other party authority. It will be noticed that none of the statutes declare that such office as chairman shall exist. It is nowhere stated that any political party shall elect or choose such an officer. Nor has the legislature anywhere undertaken in terms to grant power to any political party to elect or choose such an officer, the reason being perhaps that this is and should be a matter for each and every political party, of which there might conceivably be several in this State, to determine for itself.

While some of the statutes do place duties upon such an officer, they do so merely upon the assumption that the political party may according to its own method choose such an officer, and if so, then the law says certain duties must be performed by him; but this we think is merely for the regulatory purpose of insuring honesty and fair play in the interest of those who choose to align themselves with any particular party by voting therewith, and for the benefit of the nominees. We do not think these statutes evince any intention on the part of the General Assembly to make the office of Chairman of the State Democratic Executive Committee a public office of this State within the meaning of the foregoing definition of a public office, or in any other sense. On the contrary, they simply recognize such an officer as an officer of the *political party*, if chosen or elected by a party holding a primary, giving sanction and legal approval to his status as such, without more. Furthermore, there are other provisions of our Code relating to qualifications, commission, bond, duties, filling vacancies, and other matters pertaining to public officers, which would tend strongly to the conclusion that the office here in question is not and cannot be treated as a public office of the State of Georgia within the purview of any of the laws of this State.

Courts of other jurisdictions generally hold that an officer of a political party does not become a public officer of the State, even though the party is regulated and controlled by statute. Davis *v*. Hambrick, 109 Ky. 276 (58 S. W. 779, 51 L. R. A. 671) ; Greenough *v*. Lucey, 28 R. I. 230 (66 Atl. 300) ; Brundage *v*. Brady, 302 Ill. 576 (135 N. E. 87) ; Heiskell *v*. Ledgerwood, 144 Tenn. 666 (234 S. W. 1001) ; Attorney General *v*. Barry, 74 N. H. 353 (68 Atl. 192) ; Attorney General *v*. Drohan, 169 Mass. 534 (48 N. E. 279, 61 Am. St. R. 301) ; Ex rel Koontz *v*. Dunkle 355 Penn. 493 (50 Atl. 2d, 496) ; Tuck *v*. Cotton, 175 Ark. 409 (299 S. W. 613) ; Williamson *v*. Montgomery, 185 Ark. 1129 (51 S. W. 2d, 987) ; Stephenson *v*. Election Comrs., 118 Mich. 396 (76 N. W. 914, 42 L. R. A. 214, 74 Am. St. R. 402) ; Phelps *v*. Piper, 48 Neb. 724 (67 N. W. 755, 33 L. R. A. 153). Apparently, however, to the contrary are: Merrill *v*. Gerow, 79 Fla. 804 (85 So. 144) ; Smith *v*. McQueen 232 Ala. 90 (166 So. 788). We do not think that the Federal cases cited for the relator, including Smith *v*.

Allwright, 321 U. S. 649, (64 Sup. Ct. 757, 88 L. ed. 987, 151 A. L. R. 1110), Chapman *v.* King, 62 Fed. Supp. 639, 650 (affirmed 154 Fed. 2d, 460), and Rice *v.* Elmore, 165 Fed. 2d, 387, dealt with this question.

Nor does the act of 1946 (Ga. L. 1946, p. 75), which places certain duties on the Secretary of State, and which has been discussed by counsel on both sides, have any material bearing on the presently existing controversy.

From what has been said, we agree with the respondent that the office here in controversy is not a public office, within the ordinary meaning of that term, and that the petition should have been dismissed if the right of the relator depended solely upon that question.

■ Nevertheless it does not follow from what has been said above that the office or position here in question is not one that may be reached by the writ of quo warranto. Beginning with *Hussey* v. *Gallagher,* 61 *Ga.* 86, decided by this court in 1878, and afterwards in *Harris* v. *Pounds,* 64 *Ga.* 121, *McCarthy* v. *McKinney,* 137 *Ga.* 292 (73 S. E. 294), and *Hornady* v. *Goodman,* 167 *Ga.* 555 (146· S. E. 173), this court held that quo warranto would lie to try the title to an office in a private corporation. The *Hussey* v. *Gallagher* case involved a controversy between rival claimants to corporate offices in "St. Patrick's Total Abstinence & Beneficial Society of Savannah, Georgia," a corporation having for its purpose the promotion of temperance and spiritual welfare among its members. *Harris* v. *Pounds* involved a contest for office between two sets of trustees of a Methodist camp-ground which had been granted a charter. *McCarthy* v. *McKinney* was a contest between rival claimants to the office of secretary of "Supreme Circle of Benevolence of the United States of America," a charitable corporation. *Hornady* v. *Goodman* involved the office of president of "The Atlanta Woman's Club," a civic and social organization chartered for purely benevolent, charitable, social, and civic purposes. In *Benson* v. *Hines,* 166 *Ga.* 781 (2) (supra), it was said: "This writ [quo warranto] will lie in behalf of a claimant to test title to a private office."

The theory upon which these decisions were based was that quo warranto was the proper remedy to test the title to the office involved, not because the incumbent was a public officer within

the literal meaning of that term, but because the corporations involved had been granted, by legislative authority, a franchise, and that the usurpation of a corporate office, therefore, amounts to the usurpation of a privilege granted by the State. See 44 Am. Jur. 110. In the cases mentioned, where recourse to the writ of quo warranto was recognized, the State, of course, did not provide the qualification or prescribe the method of election of the officers concerned, but it took the officers as selected by the corporation and applied the remedy of quo warranto because they performed corporate duties under legislative authority. This court, therefore, is thoroughly committed to the doctrine that quo warranto may be employed as a remedy to test the title to an office in a private corporation, and the rule has been recognized and applied in many other jurisdictions of this country.

In the present case, it is not insisted that the incumbent of the office involved performs corporate duties, but it is urged that the principle involved in the cases relating to corporate officers is applicable here because by statute the General Assembly has from time to time imposed upon the Chairman of the State Committee of any political party holding a primary election the duty to perform specified services. The legislature in 1917 (Ga. L. 1917, p. 183) passed an act which is commonly known in Georgia as the "Neill Primary Law." It has been several times amended. That act requires any political party holding a primary election for the nomination of candidates for United States Senator, Governor, State-house officers, Justices of the Supreme Court, and Judges of the Court of Appeals to comply with all of the provisions of the act. No political party is required to nominate its candidates for public office in a primary election, but when it elects to do so, it must comply with the terms of the act. The Democratic party in this State has nominated its candidates for public office under the act each election year since its passage. Some of the duties imposed by law upon such chairman are: He must within ten days after the primary election is held, together with the Secretary of the party's Executive Committee, accurately consolidate the county-unit votes, and within three days publish the result in a newspaper published at the capital. Code, § 34-3212. It is his duty to see that the names of the successful nominees are placed on

the ballot in the general election. § 34-3213. He must sign and file with the Secretary of State immediately after the vote in any primary election is consolidated a certificate showing by counties the total number of popular and the county-unit votes received by each candidate in such primary election. Code (Ann. Supp.), § 34-3215.1 (Ga. L. 1943, p. 347). He is required to perform similar duties after any special primary election is held. Code, § 34-3215. He must receive, adopt, promulgate, publish, and certify the report from the recount committee provided for by the act of 1941 (Ga. L. 1941, p. 432; Code, Ann. Supp., § 34-3234).

While we agree with counsel for respondent that the Democratic party is not a corporation, nevertheless the principle as to quo warranto as laid down in the cases cited above applies with at least equal force to the case at bar, since the General Assembly of Georgia has by its statutes placed the stamp of law upon the Chairman of the State Executive Committee of any particular party which holds a primary election in this State, not as a public officer, but as an officer of such political party. The law in this way gives to such office of a political party a legal status or, as we have said above, places its stamp of approval upon the office as one having more than mere political existence or recognition. While the statutes of this State, imposing duties upon the Chairman of any political party holding a primary election, do not make the office a public office of the State, they do, however, as we think, give to the office a status in law at least equivalent to that of an office in a private corporation, and thus on principle make it equally subject to the writ of quo warranto.

With respect to this question the trial judge said: "When the law imposes a duty, it also confers a right and will afford a protection in the performance of such duty." We fully agree with this statement. We can not bring ourselves to think that the law would impose upon the Chairman of a party's State Committee the duty to perform the services as described above, and at the same time decline to protect his title to the office while engaged in the performance thereof.

We therefore hold that the office in controversy is one coming within the purview of our quo warranto statute.

■ ·It is further contended that the relator is seeking to enforce a purely political right, and that for this reason his petition should be dismissed. This contention is without merit. In *Beall* v. *Beall*, 8 *Ga.* 210, this court—after stating that in measures *exclusively* of a political, legislative, or executive character, the supreme authority belongs to the legislative and executive departments, and that the mode of executing such powers could never become the subject of inquiry and investigation by the courts—further said: "But were this or any other question of a different nature, and capable of judicial inquiry and decision, then it would admit of a very different consideration—the action of either of the other departments, whether legislative or executive, being capable, in its own nature, of being brought to a judicial test, is subject to judicial review. It is, in all such cases, as we conceive, that the judicial authority is the final and common arbiter, provided by the Constitution itself, and to whose decisions all others are subordinate." Cited and quoted with approval in *Thompson* v. *Talmadge*, 201 *Ga.* 867, 873 (41 S. E. 2d, 883). The relator here is not seeking to enforce a mere political right, for, as we have seen in the preceding division of this opinion, the statutes have added to that right a legal status, and thereby given to the office a legal character, which is more than a purely political right. The petition of the relator was therefore not subject to this ground of the demurrer.

Nor was the petition subject to demurrer on the ground that it showed upon its face that the relator had not attempted to pursue the remedies available to him in the forums of the Democratic party. If the action of the convention of 1947 was void as alleged in the petition, the principle here invoked by the demurrer would not apply. See Code, § 110-701; *New Mission Baptist Church* v. *Atlanta*, 200 *Ga.* 518 (37 S. E. 2d, 377).

■ The only remaining contention of the respondent, insofar as the petition and the demurrer are concerned, is that the allegations of the petition show that the relator is himself *in office*, as Chairman of the Georgia Democratic Executive Committee, whereas quo warranto is a remedy available only to one who holds the legal title to an office from which he has been ousted and which he seeks to recover. With respect to this contention, the petition in substance alleges that there was held in Macon,

Georgia, on April 30, 1947, a so-called State Democratic Convention which elected the respondent to the office in controversy. The respondent now claims the office in question, is performing duties which appertain to the office and which he has no legal right to discharge, and is preparing to hold a State Democratic primary election in 1948 on a date other than that fixed by the party while in convention on October 9, 1946. In *Holmes* v. *Sikes*, 113 *Ga.* 580 (38 S. E. 978), this court said: "A judgment of ouster on an information in the nature of a quo warranto can not be entered against one who, though once an unlawful incumbent of a public office, is not, at the time the information is filed, exercising the duties of the office or claiming any title thereto." The petition in the instant case sufficiently alleges that the respondent is not only claiming title to the office in controversy, but is in fact performing important duties pertaining to the office, and when the petition is considered in its entirety, we think that its allegations were sufficient to withstand general demurrer insofar as the respective situations and claims of the parties were concerned. The issue in a quo warranto proceeding is the title of the incumbent to an office from which he is sought to be ousted. *Center* v. *Arp*, 198 *Ga.* 574 (32 S. E. 2d, 308). For the reasons stated in this and the preceding divisions, the court did not err in overruling the respondent's demurrer.

■ The respondent further complains because the court sustained a general demurrer and struck his answer, wherein he alleged in effect, among other things, that at a convention called for April 30, 1947, and held on that date, charges were preferred against the relator for disloyalty to the party; that such charges were found against him and he was removed from the party and from such office as Chairman, and that such convention then elected the respondent as Chairman of the State Democratic Executive Committee to succeed the relator.

As to the manner in which the convention was called, the answer alleged that upon demand of the rank and file membership of the party a convention was called by the Acting Governor of Georgia, who is by custom, usage, and tradition the titular head of the party, and by the National Democratic Committeeman and the National Democratic Committeewoman, who are by usage, tradition, custom, and rules of the party liaison of-

ficers between the National and State organizations. These allegations were too vague, general, and indefinite to show any authority in the Acting Governor, either by himself or in connection with the other party officials named, to call such convention and thereby bring it into existence as a duly constituted convention of the party. This being true, the answer failed to show that such convention ever came into being as an authorized and duly constituted assembly of the State Democratic party, such as would have any right or authority either to remove the relator from office as Chairman of the State Democratic Executive Committee or to elect the respondent to such office.

We having thus ruled that the allegations of the response show no proper call for the convention, and the answer showing that Peters was properly installed in office, and there being no contention that he was removed except by the convention which we have held to be an illegal convention, all other questions raised by the answer are necessarily controlled thereby adversely to the respondent, and therefore it becomes unnecessary to deal specifically with them. It follows that the trial judge did not err in sustaining the general demurrer of the relator and in striking the answer of the respondent.

As shown in the statement of facts, there was undisputed evidence supporting the allegations of the petition, and the judge did not err in entering a finding and judgment in favor of the relator.

*Judgment affirmed. All the Justices concur, except Wyatt, J., who took no part in the consideration or decision of this case.*