The State, ex rel. McCurdy, v. DeMaioribus.

[Cite as State, ex rel. McCurdy, v. DeMaioribus, 9 Ohio App. 2d 280.]

(No. 27978—Decided March 9, 1967.)

*Messrs. Spieth, Bell, McCurdy & Newell* and *Mr. Ron Tonidandel*, for relator.

*Mr. William J. Kraus* and *Mr. Alvin I. Krenzler*, for respondent.

Silbert, J. This is an action in quo warranto orginating in this court on an agreed statement of facts wherein relator seeks to remove respondent from the position of Chairman of the Cuyahoga County Central Committee of the Republican Party.

The relevant facts are as follows: In the primary election held on May 3, 1966, the relator, Everett D. McCurdy, was elected a member of the Republican County Central Committee from Precinct 4-J in Cleveland Heights, Ohio. Thereafter, at

a meeting held in accordance with Section 3517.04, Revised Code, on May 11, 1966, both relator and respondent, A. L. De-Maioribus, were nominated for the office of chairman. Relator objected to the nomination of respondent upon the ground that the respondent was not an elected member of the county central committee and, therefore, was ineligible to be nominated or selected for the office of chairman. However, relator's objection was overruled and the election proceeded. A request for a secret ballot was overruled and a voice vote was taken, after which the respondent was declared the duly elected Chairman of the Republican County Central Committee. Thereupon, relator instituted this action seeking to remove respondent from the office of chairman.

The courts of the United States have had a long history of not interfering in the internal affairs of policital parties. The reasons for this position taken by the courts are simple. Although political parties have certain public responsibilities, they are basically voluntary associations made up of persons who act together for various community and party purposes and who are governed in most respects by their own rules and usages. Furthermore, political parties normally provide their own procedures and tribunals for the resolution of their internal affairs. *State, ex rel. Webber,* v. *Felton* (1908), 77 Ohio St. 554, 579-580. Consequently, the courts of the United States have been consistent in holding that party tribunals rather than the courts of law provide the proper forum in which actions such as in the instant case are to be decided. Annotation, 169 A. L. R. 1281, 1282 (1947).

In Ohio, the determinant of whether an action to try the title to an office may be brought in a court of law is Section 2733.01, Revised Code. That section, in part, provides:

"A civil action in quo warranto may be brought in the name of the state:

"(A) Against a person who usurps, intrudes into, or unlawfully holds or exercises a *public office,* civil or military, * * *, within this state, * * *." (Emphasis added.)

Although "public office" is nowhere defined in either the Revised Code or the Ohio Constitution, the general definitions which have been created and utilized by the courts and textwriters are legion. Despite inconsistent definitions, however, it

is the general rule in the United States that party committee-
men do not hold a "public office"—although the Legislature
may, by statute, regulate the election and conduct of political
committees. *Tuck* v. *Cotton* (1927), 175 Ark. 409, 299 S. W.
613; *Usilton* v. *Bramble* (1911), 117 Md. 10, 82 A. 661; *Heiskell*
v. *Ledgerwood* (1921), 144 Tenn. 666, 234 S. W. 1001; *Morris* v.
*Peters* (1948), 203 Ga. 350, 358, 46 S. E. 2d 729; 25 American
Jurisprudence 2d 810, Elections, Section 124; 67 Corpus Juris
Secundum 100, Officers, Section 2, n. 56. The rule that party
committeemen are not "public officers" and that they do not
hold a "public office" has been applied and followed by the Ohio
courts. See, *Board of Elections* v. *Henry* (1927), 25 Ohio App.
278, 280; *Muskingum County Democratic Executive Committee*
v. *Burrier* (Common Pleas, 1945), 31 Ohio Opinions 570; 19 Ohio
Jurisprudence 2d 186, Elections, Section 183. Since a party
committeeman is not a "public officer," most jurisdictions hold
that quo warranto is not available to try the title to a party
committeeman's office. *People, ex rel. Brundage,* v. *Brady*
(1922), 302 Ill. 576, 135 N. E. 87; *State, ex rel. Broderick,* v.
*Barry* (1907), 74 N. H. 353, 68 A. 192; Annotation, 86 A. L. R.
246, 249 (1933); 25 American Jurisprudence 2d 813, Elections,
Section 127, n. 14; 74 Corpus Juris Secundum 190, Quo War-
ranto, Section 8 (a). Applying this general rule, the Supreme
Court of Pennsylvania, in the almost identical case of *Common-
wealth, ex rel. Koontz,* v. *Dunkle* (1947), 355 Pa. 493, 50 A. 2d
496, 169 A. L. R. 1277 (a county chairmanship contest wherein
the elections were conducted in the same manner as in the in-
stant case), affirmed the trial court's holding that "as officers
of a political party are not public officers, quo warranto will not
lie to try title to the office of chairman of the party county com-
mittee." See, also, *State, ex rel. Broderick* v. *Barry* (1907), 74
N. H. 353, 68 A. 192.

However, in 1962, the Ohio Supreme Court, in *State, ex rel.
Hayes,* v. *Jennings,* 173 Ohio St. 370 (analyzed in 31 Cinc. Law
Rev. 479), held that under Section 305.02 (B), Revised Code,
authorizing the county central committee of a political party to
fill vacancies in certain offices held by members of the party,
the committeemen were made public officers by virtue of the
grant to them of certain powers to be exercised by them in the

office they held. In paragraph one of the syllabus, the Supreme Court states:

"The provisions of Section 305.02, Revised Code, effective October 12, 1961, which authorize the members of the central committee of a political party to fill vacancies occurring, *inter alia*, in the office of clerk of courts of a county, confer official power upon the members of the central committee, and this annexation of power to this position makes it a public office and is a constitutional grant of power by the General Assembly. (Section 1, Article X, Ohio Constitution.)"

Unless we are to take the anomalous position that the office of committeeman is a "public office" for some purposes, *i. e.*, appointment of interim officials, and not for others, *i. e.*, regular party business, it would appear that in Ohio the office of party committeeman is now amenable to the quo warranto statute. Similarly, as the committeemen themselves are public officers, it follows that the presiding official of the group of public officers would also be a "public officer." See, *State, ex rel. Attorney General,* v. *Andersen* (1887), 45 Ohio St. 196, 199. Consequently, we determine, and therefore hold, that the chairmanship of a county central committee is a public office and that quo warranto will lie to try the title thereto.

In light of this holding, the next question posed is whether the provisions of the Revised Code regulating political parties require that the chairman of the county central committee be an elected member of such committee. This is, of course, a question of first impression in Ohio, and, due to the recent change in the Ohio law governing the status of a committeeman's office, *State, ex rel. Hayes,* v. *Jennings* (1962), 173 Ohio St. 370, very little analogous case law is available as precedent.

Our review of Sections 3517.01 to 3517.07, Revised Code, reveals that, although these sections are comprehensive in scope, in no part of the pertinent provisions of these statutes is it specifically required that the chairman be a duly elected member of the county central committee. The rule normally applicable to a lack of legislative regulation in a situation like this is, as stated in *State, ex rel. Pfeifer,* v. *Stoneking* (1946), 80 Ohio App. 70, 77, that "* * * in the absence of a statutory provision to the contrary, the county central committee had a right to

provide rules for its own procedure * * *." See, also, 25 American Jurisprudence 2d 804, Elections, Section 118; Annotation, 169 A. L. R. 1281 (1947). Furthermore, the idea that the Legislature intended to lay down a rule that prior membership of the chairman is required receives no support from an analysis of the general pattern of the statute itself or from the logical inferences to be drawn therefrom. Firstly, under Section 3517.03, Revised Code, the county central committee must elect an executive committee to exercise such powers as are granted to it. In practice, the executive committee handles all party affairs until the next primary election; yet there is no requirement that members of the executive committee be members of the county central committee. In the instant case, the joint stipulation of facts reflects the relevant portion of the resolution of the county central committee conferring authority on the executive committee as follows:

"The County Republican Executive Committee shall have all the powers, and shall exercise all authority for the Republican Party in Cuyahoga County, as provided by statute for the County Central Committee; shall have complete management and control of all matters and business of the County Central Committee and the Republican Party in relation to all matters which by law or custom devolve upon the County Central Committee or the County Executive Committee.

"The County Executive Committee shall have authority to fill such vacancies as may occur in the membership of the Central Committee and the Executive Committee.

"The County Executive Committee shall elect its own officers.

"The Chairman of the Executive Committee shall be authorized to act for and on behalf of the Executive Committee and shall be empowered to conduct the business of the Republican Party in Cuyahoga County; to operate and direct such offices as may be established for the conduct of the activities of the Republican Party and to administer the affairs of the Republican Party.

"All acts and conduct of the said County Executive Committee and the executive officers of the Republican Party of Cuyahoga County are hereby authorized, ratified and approved."

It is a reasonable deduction that a legislative schema allowing the control of the party mechanisms to be exercised by an executive committee which may be composed of persons who are not members of the central committee would certainly not require that the chairman of the central committee be an elected member thereof.

Secondly, Section 3517.04, Revised Code, provides that "The meeting shall be called to order by the retiring chairman or * * *." It is not stated that such retiring chairman shall be an elected member of the new county central committee, and, in the instant case, he was not. The respondent properly called the meeting to order.

Thirdly, Section 3517.04, Revised Code, provides that the central "committee shall proceed to organize by the election of a chairman * * *." The rule of parliamentary procedure regarding the organization of committees and the choosing of officers, as laid down by no less an authority than H. M. Robert, is, "There is no reason why any society * * * should not appoint any of its officers from outside its membership if it chooses to do so, provided it is not prohibited in its by-laws * * *." Robert, Parliamentary Law, Chapter XXVII, pages 297-298 (1923). This rule is only logical as similar situations are encountered in various other areas of activity. For example, to be eligible for the office of director or chairman of the board of a corporation a person does not have to be a shareholder unless the articles or regulations so provide. 12 Ohio Jurisprudence 2d 484, Corporations, Section 383; State, ex rel. Attorney General, v. McDaniel (1872), 22 Ohio St. 354; Section 1701.56 (C), Revised Code. Numerous other illustrations, limited only by the course of one's experience, could also be cited to like effect. It is thus reasonable to assume that the Legislature was cognizant of this normal method of organization and rule of parliamentary procedure and that it realized that, in the absence of a contrary command, these procedures would be utilized for county central committee organization.

Finally, reference to the laws of other states wherein statutes have been enacted establishing some degree of control over political committees demonstrates that it is not uncommon for the Legislature to negate the normal rule of parliamentary law by specifically requiring that the officers of political com-

mittees be elected members thereof. See, Chapter 46, Section 7-8 of the Illinois Rev. Stats.; Section 16-17-10 North Dakota Century Code 1965. Also, it is not uncommon for a Legislature to reaffirm the normal rule and provide that committee officers need not be elected members of the committee, see, Michigan Stat. Ann., Rev. 1956, Section 6.1599; Section 15 of the New York State Election Law; or that the eligibility requirements for officers be left to the party rules and regulations, see, 25 Pennsylvania Stat., Section 2837. How are we to say that the Legislature, by its silence, intended anything other than to leave the matter up to the central committee itself or to the traditional rules of parliamentary procedure? The Legislature has been silent, and for this court to establish a rule and then engraft it on a statute which has been silent heretofore would constitute judicial legislation. This court will not engage in such practice.

It must continually be borne in mind that the results of the election involved herein represented the will of the majority of a voluntary body acting in accordance with accepted procedures. This court—especially in light of the long judicial history of remaining aloof from such political struggles—may not negate the expressed will of the overwhelming majority of the approximately eighteen hundred duly elected county central committeemen of Cuyahoga County in the absence of a clear, affirmative command by the Legislature. As no such command exists, this court will not override the majority's choice.

Several arguments advanced by the relator deserve some mention. By his references, relator contends (1) that "organize" as used in Section 3517.04, Revised Code, is used in the reflexive sense, and (2) that as legislative bodies are usually required to choose their presiding officers from among their membership, the same rule should apply to political committees as well. These arguments, however, may be quickly disposed of. Firstly, even if the Legislature intended to use the word "organize" in its reflexive sense, the word so defined would still mean only "organize itself," see 8 Oxford Dictionary 345 (1909); 7 Oxford Dictionary 196 (1909); Webster, New International Dictionary (2d Ed., 1959), 1719, and it by no means follows that this must be "organize from within." This special meaning was urged by relator in oral argument. The

statute is silent as to the manner of organizing. It does not specify that the order must be from within. The accepted meaning of the word "organize" is reviewed by Mr. Justice Harlan in his opinion in *Yates* v. *United States* (1957), 354 U. S. 298. He mentions Webster's New International Dictionary, 2d Ed., defining "organize" in one meaning as "* * *; to systematize; to get into working order; * * *." He also lists Black's Law Dictionary definition: "To establish or furnish with organs; to systematize; to put into working order; to arrange in order for the normal exercise of its appropriate functions." As defined in these lexicons, this is exactly what was done by the duly elected membership of the Cuyahoga County Republican Central Committee. It is clear that the respondent does not have a vote as an elected member of the county central committee, but by their perfectly valid and legal action he was chosen as the chairman of their body.

The relator's analogy to legislative bodies is completely invalid, as Legislatures, unlike political committees, are rigidly bound by statutory law and tradition regarding the selection of their officers, and, with the exception of such bodies as the United States Senate wherein the presiding officer is designated by the Constitution, they have no other qualified source from which to draw their leaders..

Consequently, we determine, and therefore hold, that, in the absence of a specific legislative command to the contrary, there is no requirement that the chairman of the county central committee be an elected member thereof.

*Writ denied.*

CORRIGAN, P. J., and SKEEL, J., concur.