the record on appeal and find no error of law. A detailed opinion would serve no jurisprudential purpose. The judgment is affirmed in accordance with Rule 30.25(b).

**STATE of Missouri, Respondent,**

v.

**James ANDERSON, Appellant.**

**No. 73142.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 15, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 6, 1998.

N. Scott Rosenblum, Asst. Public Defender, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joanne E. Joiner, Asst. Atty. Gen., Jefferson City, for respondent.

Before JAMES R. DOWD, P.J., and CRAHAN and RICHARD B. TEITELMAN, JJ.

*ORDER*

PER CURIAM.

Defendant appeals the judgment and sentence entered upon his conviction by a jury of one count of forcible sodomy in violation of section 566.060 RSMo 1994 and of one count of attempted forcible rape in violation of section 566.030.2 RSMo 1994. Defendant was sentenced to ten years imprisonment on each count, to be served consecutively. We have reviewed the briefs of the parties and

**STATE ex inf. Robert P. McCULLOCH, Prosecuting Attorney, ex rel., Kenneth W. McClendon, et al., Relator/Respondent,**

v.

**Theodore HOSKINS, Respondent/Appellant.**

**No. 74562.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 6, 1998.

Elbert A. Walton, Jr., St. Louis, for appellant.

Jeffrey E. Hartnett, St. Louis, for respondent.

CRAHAN, Judge.

Theodore Hoskins ("Mayor") appeals the judgment of ouster removing him from office as Mayor of the City of Berkeley [1] for allegedly violating Article II, Section 2 of the Berkeley City Charter, which provides, in pertinent part, "A Councilman shall, during his/her term, hold no other elective public office. . . ." The trial court held that Mayor violated this provision when, while serving as Councilman and Mayor, he was elected to the office of Democrat Committeeman for Norwood Township, St. Louis County. On appeal, Mayor contends the trial court erred in removing him from office because, as a matter of law, the office of committeeman of a political party is not an "elective public office" within the meaning of Article II, Section 2 of the City Charter. We agree and reverse the judgment.

The facts are undisputed.[2] Mr. Hoskins was elected Mayor of the City of Berkeley on

---

1. Because the duties of the Mayor of the City of Berkeley are not co-extensive with the boundaries of the state, this appeal does not involve the title to any state office and thus does not fall within the exclusive jurisdiction of the Missouri Supreme Court. *State v. Olvera*, 969 S.W.2d 715 (Mo.banc 1998). Accordingly, jurisdiction is properly lodged in this court. Mo. Const. Art. V, Sec. 3.

2. Some of the facts set forth herein are based on the record filed in a separate appeal, *State ex rel. Kreutz v. Young*, 974 S.W.2d 592 of which we take judicial notice in order to resolve the issue of mootness raised by Relator and discussed infra.

April 2, 1996. On August 6, 1996 Mayor was also elected Democrat Committeeman for Norwood Township, St. Louis County. Article II, Section 2 of the Berkeley City Charter provides:

Section 2. Qualifications of Members

Each member of the Council shall be a registered voter of the City and shall have been a resident thereof or of the territory annexed to the City for at least one (1) year immediately prior to his/her election. The Councilmen elected by wards shall be residents of the respective wards from which they are elected. A Councilman shall, during his/her term, hold no other elective public office and shall not be an officer or employee of the City Government. If a Councilman shall cease to possess these qualifications or shall be convicted of a felony, malfeasance in office, bribery, or other corrupt practice, or of a misdemeanor involving moral turpitude, he/she shall forthwith forfeit his/her office.

On July 23, 1997 Relator Kenneth W. McClendon ("Relator") filed this action in quo warranto along with a signed authorization from Robert McCulloch, the St. Louis County Prosecutor, to prosecute the action to final judgment in his own name.

In August, 1997 Louis Bowser filed a petition for a recall election to remove Mayor from office. The City Clerk rejected this petition as defective in September, 1997.

In November, 1997 Janet Kreutz filed a new recall petition which was also rejected by the Clerk. The grounds stated in the recall petition were the same as asserted in this action-*i.e.*, violation of Article II, Section 2 of the Berkeley City Charter. Kreutz then filed a mandamus action in the Circuit Court of St. Louis County to force the Clerk to accept the recall petition and schedule a recall election. In March, 1998 the Circuit Court issued its writ of mandamus and ordered that the recall election be held on April 7, 1998. Later, in response to a writ of prohibition entered by this court, the recall election was rescheduled for August 4, 1998. The City of Berkeley appealed the judgment ordering the recall election.

On June 15, 1998 the trial court entered findings of fact and conclusions of law in the quo warranto action finding that Mayor had violated Article II, Section 2 of the Berkeley City Charter by simultaneously holding the office of Mayor and Democrat Committeeman.

On June 23, 1998 this court affirmed the judgment ordering a recall election to be held on August 4, 1998. The following day, the trial court issued its judgment in the quo warranto action ousting Mayor from office and denied Mayor's motion to stay execution of the judgment pending appeal.

In July, 1998 the City of Berkeley moved this court to stay enforcement of the judgment ordering the recall election because, due to the judgment of ouster, the office of Mayor was now vacant. Article XI, Section 3 of the Berkeley City Charter provides: "A recall proceeding shall at once be discontinued if the office of the Councilman whose recall is in question becomes vacant." The motion was denied.

On August 7, 1998 Relator filed in this court a Suggestion of Mootness, claiming that Mayor lost the recall election held on August 4, 1998 and that we are therefore powerless to return him to office even if we conclude he was wrongfully removed in the quo warranto action. Mayor filed suggestions in opposition asserting four reasons why his appeal is not moot.

■ First, Mayor asserts that due to his erroneous ouster, his office became vacant on June 24, 1998. Therefore, Mayor argues, the recall election was held in violation of Article XI, Section 3 of the Berkeley City Charter set forth above. According to Mayor, this rendered the election moot, null, void and of no force or effect. As Mayor succinctly puts it "[y]ou can't recall a person from office who is not in office."

Next, Mayor urges that the determination that the recall election was properly ordered by the court in the mandamus action is not final because his application for transfer has not yet been ruled on by the Missouri Supreme Court.[3]

3. Mayor's application for transfer was denied by the Missouri Supreme Court on September 22,

In addition, Mayor claims that it is important that he and other similarly situated political committeemen receive guidance concerning whether continued service as committeemen bars them from seeking future elective office in the City of Berkeley. Mayor asserts that he has every intention of running for Mayor again and should not be required to suffer another ouster in order to have the merits of his legal right to hold office reviewed by this court.

Finally, in his supplemental suggestions in opposition, Mayor draws our attention to a petition filed against him in federal district court seeking to impose liability upon him, at least in part, because he illegally served as Mayor while also holding office as a political party committeeman. Thus, Mayor urges, even if he cannot be restored to office, the trial court's judgment that he violated the City Charter by simultaneously holding the office of Mayor and committeeman will have direct and collateral consequences that justify review by this court.

We need not and do not decide in this case what consequences flow from the recall election conducted subsequent to Mayor's ouster. Even assuming *arguendo* that the results of that election would prevent Mayor from being restored to office, we agree with Mayor that the judgment is not moot. If the trial court erred in its determination that Mayor violated the City Charter, Mayor was at the very least wrongfully removed from office from the date of the judgment to the time of the recall and may have a claim for any emoluments of office of which he was deprived during that period. Further, Mayor has demonstrated that he is aggrieved by the judgment even if he cannot now be restored to office inasmuch as the judgment is being used as the predicate for a civil action against him. Accordingly, we hold that the appeal is not moot.

■ Our review of this court tried case is governed by the familiar standard expressed in *Murphy* v. *Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial

court must be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law." *Id.* at 32. In his sole substantive point on appeal, Mayor essentially contends that the trial court erroneously declared the law in holding that the office of Democrat Committeeman is an "elective public office" within the meaning of Article II, Section 2 of the Berkeley City Charter.

■ In construing the Charter we must give effect to the intent of the framers. *State ex rel. Gragg* v. *Barrett*, 352 Mo. 1076, 180 S.W.2d 730, 731 (1944). The Berkeley City Charter was adopted in 1957 and the provision at issue was in the original Charter at the time it was adopted. No definition of "elective public office" is set forth in the Charter. However, Mayor draws our attention to two cases decided very near the time the Charter was adopted which he claims establish that the office of political party committeeman was not generally perceived to be a public office at that time.

In *State ex rel. Wright* v. *Carter*, 319 S.W.2d 596 (Mo.banc 1958), the Missouri Supreme Court was called upon to determine whether a committeeman of a political party was within the purview of the Corrupt Practices Act and thereby required to file a statement of campaign expenses. In an earlier line of cases, the court had consistently held that political party committeemen, although not strictly "public officers" in the full sense of the term, nonetheless held an office that could be characterized as "in the nature of" a public office and thus were entitled to the benefit of the law governing election contests.[4] In *Carter*, however, the court distinguished and limited these cases to the context of eligibility to bring election challenges. *Id.* at 599. Emphasizing that the Corrupt Practices Act was a penal statute, the court held that the disclosure requirements did not apply to a political party committeeman. *Id.*

---

1998.

4. *State ex rel. Ponath v. Hamilton*, 240 S.W. 445 (Mo.banc 1922); *State ex rel. Dawson v. Falkenhainer*, 321 Mo. 1042, 15 S.W.2d 342 (1929);

*State ex rel. Kaysing v. Ryan*, 334 Mo. 743, 67 S.W.2d 983 (1934); *Noonan v. Walsh*, 364 Mo. 1169, 273 S.W.2d 195 (1954).

at 600. Furthermore, the court noted that its conclusion was consistent with the weight of authority in other jurisdictions to the effect that candidates for membership in party committees were not "candidates for public offices." *Id*, quoting 18 Am.Jur., Elections section 238, pp. 338–39; *See also Shaver* v. *Moyer*, 324 S.W.2d 148, 150–51 (Mo.App. 1959) (Political committeemen are not "elective officers" of the City of Independence).

Our independent research confirms that the general understanding in most jurisdictions at the time the Charter was adopted was that members of a political party committee do not hold a "public office."[5] The context in which the issue has arisen in other jurisdictions varies widely. Some states have held that because a political party committeeman is not a public officer, an action in quo warranto will not lie to oust him from office.[6] A well reasoned decision by the Georgia Supreme Court held that a political party committeeman is not a public officer but that quo warranto would lie.[7] Some states have declined to adjudicate disputes involving political party committeemen on the ground that they are not "public officers."[8] Still other states have declined to hear election contests on the ground that the office of political party committeeman is not a "public office."[9] The California Supreme Court has held that political party committeeman is not a "public office" within the meaning of a statute prohibiting filing for more than one office in an election.[10] Another state has held that a political party committeeman is not a public officer for purposes of determining whether a change in boundary lines requires the committeeman to vacate his office.[11] Indeed, our research disclosed only one state which has held the office of political party committeeman to be a public office.

In *State* v. *DeMaioribus*, 9 Ohio App.2d 280, 224 N.E.2d 353 (Ohio App.1967), the Ohio Court of Appeals acknowledged the general rule in the United States that political party committeemen do not hold a "public office" although the legislature may, by statute, regulate the election and conduct of political committees. *Id.* at 355. In Ohio, however, the legislature enacted a law authorizing the county central committeemen of a political party to fill vacancies in certain county offices previously held by a member of that party. *Id.* This was held to confer official power upon the members of the party committee and thereby rendered them "public officers" subject to quo warranto. *Id.* at 356. *Cf., State ex rel. Cain* v. *Kay*, 38 Ohio St.2d 15, 309 N.E.2d 860 (1974) (distinguishing and limiting availability of quo warranto to cases where action of the committeeman directly affects the public).

The foregoing cases confirm the general view in the United States that, even in a nonpenal context, the office of political party committeeman is not a "public office." The rationale for the proposition that the office of political party committeeman is not a "public office" is explained in *Opinion of the Justices*, 347 Mass. 797, 197 N.E.2d 691 (1964), which in turn quotes an earlier Massachusetts case, *Attorney Gen.* v. *Drohan*, 169 Mass. 534, 48 N.E. 279 (1897) for the following discussion of the issue:

> Except for the fact that several acts have been passed by the legislature which relate, amongst other things, to political

5. We reluctantly resorted to independent research because neither party's brief was particularly illuminating.

6. *Commonwealth ex rel. Koontz* v. *Dunkle*, 355 Pa. 493, 50 A.2d 496 (1947); *Greenough* v. *Lucey*, 28 R.I. 230, 66 A. 300 (1907); *State* v. *Millspaugh*, 241 Ind. 656, 175 N.E.2d 13 (1961); *Brundage* v. *Brady*, 302 Ill. 576, 135 N.E. 87 (1922).

7. *Morris* v. *Peters*, 203 Ga. 350, 46 S.E.2d 729 (1948).

8. *Carter* v. *Tomlinson*, 149 Tex. 7, 227 S.W.2d 795 (1950); *Attorney General* v. *Barry*, 74 N.H. 353, 68 A. 192 (1907).

9. *Tuck* v. *Cotton*, 175 Ark. 409, 299 S.W. 613 (1927); *Board of Elections of Montgomery County et al.* v. *Henry*, 25 Ohio App. 278, 158 N.E. 94 (1927).

10. *Moore* v. *Panish*, 32 Cal.3d 535, 186 Cal.Rptr. 475, 652 P.2d 32 (1982).

11. *State ex rel. Tomblin* v. *Bivens*, 150 W.Va. 733, 149 S.E.2d 284 (1966).

committees, no one would contend, we presume, that the members of a political committee belonging to one of the political parties hold public office by reason of their being members of such committee. We do not think that the effect of these statutes has been or is to make that a public office which was not one before their enactment. Without attempting an exhaustive definition of what constitutes a 'public office,' we think that it is one whose duties are in their nature public; that is, involving in their performance the exercise of some portion of the sovereign power, whether great or small, and in whose proper performance all citizens, irrespective of party, are interested, either as members of the entire body politic or of some duly-established division of it. *Brown* v. *Russell,* 166 Mass. 14, 43 N.E. 1005, 32 L.R.A. 253 [(1986)].

\* \* \*

Manifestly, membership in a political committee belonging to one party or another does not come within the above description of what constitutes public office. The fact that the legislature has deemed it expedient to regulate by statute the election and conduct of political committees does not make the office a public one. The members of them continue to be, as before, the officers of the party which [s]elects them, and their duties are confined to matters pertaining to the party to which they belong, and which alone is interested in their proper performance.

197 N.E.2d at 693–94.

Likewise in Missouri, the duty of a political party committeeman is solely to represent the interests of his party, not the public at large. Section 115.605 RSMo 1994 provides:

**Purpose of committee** – Each party committee shall be selected as provided in this subchapter for the purpose of representing and acting for the party in the interim between party conventions. (emphasis added).

■ As the California Supreme Court observed in *Moore* v. *Panish, supra* n. 10, political party committeemen do not exercise any sovereign powers of government. 652 P.2d at 37. Rather, committeemen conduct the party's political campaigns under the direction of the state party organization. *Id.* Although such functions may be considered beneficial to the public insofar as they promote the party system adopted by the state, it is the interplay of the parties within an established framework rather than the specific campaign activities of the individual parties which benefits the public. *Id.* at 37–38. The functions of party committee. members remain those of their particular political party and do not involve the exercise of the sovereign power of the public. *Id.* at 38.

■ We are also mindful that, as in *State ex rel. Wright* v. *Carter,* we are construing a penal law. The penalty for violation of this provision of the Charter is forfeiture of office. The penal nature of the provision at issue supports a narrow construction. For all of the foregoing reasons, we hold that the office of political party committeeman is not an "elective public office" within the meaning of Article II, Section 2 of the Berkeley City Charter.

Relator and the trial court in its findings of fact and conclusions of law rely on a provision of the Campaign Finance Disclosure Law, section 130.011(26) RSMo 1994, for the proposition that a political party committeeman is a public office. Section 130.011(26) provides:

**Definitions.** As used in this chapter, unless the context clearly indicates otherwise, the following terms mean:

(26) "**Public office**" or "**office**," any state, judicial, county, municipal, school or other district, ward, township, or other political subdivision office or any political party office which is filled by a vote of registered voters.

This provision, which was originally enacted in 1978, has no bearing on the issue presented, which is the meaning of the Berkeley City Charter adopted by a vote of the citizens in 1957. Moreover, the definition is expressly limited to "as used in this chapter," which pertains to required financial disclosures to be made by those running for elective office. The salutary purposes served

by such disclosures are obviously the same for any elective office which affects the public interest regardless of whether that office is one historically considered a "public office." The inclusion of political party committeemen in the definition of public office *or* office for purposes of the Campaign Finance Disclosure Law does not change the nature or duties of political party committeemen, who do not and cannot exercise any sovereign power of the state.

We hold that the office of political party committeeman is not an "elective public office" within the meaning of Article II, section 2 of the Berkeley City Charter. Accordingly, we reverse the judgment of the trial court.

JAMES R. DOWD, P.J., and RICHARD B. TEITELMAN, J. concur.