Abdollah GASHGAI, M.D.

v.

MAINE MEDICAL ASSOCIATION et al.

Supreme Judicial Court of Maine.

Jan. 19, 1976.

---

2. Defendant does not take issue with the jury finding that the assault was high and aggravated.

Locke, Campbell & Chapman by Frank G. Chapman, Augusta, Skelton, Taintor & Abbott by Charles H. Abbott, Lewiston, for plaintiff.

Verrill Dana Philbrick Putnam & Williamson by Charles L. Cragin, III, John A. Mitchell, Portland, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

This is an appeal by the defendants, Maine Medical Association (a Maine corporation), the Ethics and Discipline Committee of the Maine Medical Association and Bruce Trembly, M.D., in his capacity as Chairman of said Committee, from a (Kennebec County) Superior Court judgment embodying a permanent injunction against defendants.

The judgment was entered in a civil action against defendants instituted on May 10, 1974 by plaintiff, Abdollah Gashgai, M.D., a medical doctor duly licensed to practice medicine in the State of Maine and a member of the defendant Maine Medical Association. The complaint alleged, inter alia, that the Ethics and Discipline Committee of the Maine Medical Association, over the signature of its Chairman, Dr. Trembly, had issued a report concerning plaintiff and distributed it to

"a variety of individuals, institutions, bureaus and offices, in violation of the bylaws and procedures of Defendant Association."

The complaint also averred that the conclusions of the report

". . . are so tainted by . . . failure to accord due process that they have no basis in law or fact",

and the actions of the Committee and its Chairman

". . . are so arbitrary, capricious, discriminatory, willful, wanton and reckless as to cause irreparable loss and damage to Plaintiff."

Asserting that he would

". . . suffer immediate and irreparable injury, . . . unless said report ceases to be circulated and unless all existing copies are retrieved",

plaintiff sought preliminary and permanent injunction prohibiting ". . . further circulation of said report" and commanding the parties who had sent or delivered the report to other persons "to retrieve all copies" sent or delivered.

■ After defendants had answered the complaint, the Justice presiding in the Superior Court held a hearing on June 12, 1974. On September 12, 1974, he filed findings of fact all of which are adequately supported by evidence and are, therefore, here controlling. These findings disclose the following factual situation.

On March 8, 1974 Mrs. Rayna B. Leibowitz, acting in her official capacity as a Medical Claims Consultant for the Department of Health and Welfare of the State of Maine, and in accordance with instruc-

tions given her by Dr. George Sullivan acting in his capacity as a consultant to said Department and a member of the Board of Registration in Medicine of the State of Maine, forwarded to defendant Trembly, by letter, a request on behalf of the Department for an investigation by the Maine Medical Association Ethics and Discipline Committee of certain aspects of Dr. Gashgai's medical practice and conduct in specific instances. On March 25, 1974 Mrs. Leibowitz sent another letter providing supplemental information and renewing the Department's request for investigatory assistance.

Shortly after March 8, 1974 Dr. Trembly, by telephone, and without indicating that charges had been lodged against Dr. Gashgai, requested that he appear on March 27, 1974 before a committee of the Maine Medical Association. At that time, Dr. Trembly did not further identify the committee. Subsequently, an undated letter was sent to Dr. Gashgai confirming the date and time of the meeting and informing Dr. Gashgai that a committee of the Maine Medical Association (still not more specifically identified) had been asked to look into the reasons for particular charges Dr. Gashgai had made to the Department of Health and Welfare.

At all times here relevant Dr. Gashgai has been a member of the Maine Medical Association which (although a corporation) is, basically, a voluntary association of individuals licensed to practice medicine in the State of Maine. A condition precedent to membership in the Maine Medical Association is membership in a County Medical Society which is a component of the Maine Medical Association. Dr. Gashgai is a member of the Kennebec County Medical Society, one such county component.

Dr. Gashgai honored the request of Dr. Trembly and appeared on the evening of March 27, 1974 at the Holiday Inn in Augusta where he met informally with Dr. Trembly and other doctors who were members of the Ethics and Discipline Committee of the Maine Medical Association. It soon became apparent to Dr. Gashgai that the meeting had lost its original "conversational" tone and had become accusatory of him. It then dawned on Dr. Gashgai that Dr. Trembly and the others were actively engaged in investigating charges against him which were serious.

During a questioning of Dr. Gashgai lasting approximately two hours Dr. Trembly and the others on the Committee made references to invoices and other documents which had been provided to them by the Department of Health and Welfare. They also utilized information contained in confidential documents supplied to the Committee, without Dr. Gashgai's prior knowledge or consent, by Dr. Henry J. Wheelwright, Medical Director of the Augusta General Hospital. These same documents ultimately formed the basis of the conclusions reached by the Committee.

On March 27, 1974, without having undertaken any investigation additional to that constituted by the questioning of Dr. Gashgai on that date, the Committee issued a report containing the conclusions that the invoices submitted by Dr. Gashgai to the State Department of Health and Welfare showed gross overutilization, malpractice and unethical practice by Dr. Gashgai. The report also recommended that Dr. Gashgai be severely reprimanded.

The Committee sent the report to Dr. Gashgai and also to the Maine Medical Association, the Board of Registration in Medicine of the State of Maine, the Department of Health and Welfare of the State of Maine and the Medical Director of the Augusta General Hospital. As the result of having received the report, the Department of Health and Welfare placed Dr. Gashgai on a "constant surveillance" list, thereby requiring that all invoices henceforth submitted by Dr. Gashgai be carefully reviewed to evaluate the propriety of his charges.

The presiding Justice supported the permanent injunction issued by him[1] with the following conclusions: (1) the activities of Dr. Trembly and the other persons who had acted with him as members of the Committee on Ethics and Discipline of the Maine Medical Association were in violation of various of the Association's by-laws; (2) said activities contravened procedural due process requirements of the Constitutions of the United States and the State of Maine as applicable by virtue of the special relationship here existing between a governmental agency of the State of Maine and the Maine Medical Association and its Committee—a relationship sufficient to transform the Committee's activities into governmental action subject to constitutional due process mandates.

Defendants maintain on appeal that the findings of the presiding Justice of violations of the Association's by-laws and his references to the legal consequences flowing therefrom were not intended to be independently separate grounds of decision but were offered only as ancillary support for his constitutional due process conclusions. Defendants contend, therefore, that the only issue to be decided in this appeal is the correctness of the presiding Justice's holding that defendants' actions here in question are subject to the due process mandates of the United States and Maine Constitutions.

We disagree with defendants. Our study of the record convinces us that plaintiff had maintained before the presiding Justice that the violations of the Association's by-laws were discrete grounds entitling him to the injunctive relief sought by him independently of his additional claim of constitutional due process violations. The presiding Justice addressed each of these separate claims and concluded that each was a sufficient, independent ground justifying the injunctive relief he ordered.

We agree with the presiding Justice that the Committee actions of which Dr. Gashgai complains were in violation of particular by-laws of the Maine Medical Association and involved actual, and imminently threatened, injury to Dr. Gashgai—injury which was irreparable because it tended to impair Dr. Gashgai's opportunity to earn a livelihood through the practice of his chosen profession and, therefore, required the injunctive relief ordered. We sustain the judgment of the Superior Court Justice on this ground and do not reach the constitutional due process question.

The presiding Justice found that the Ethics and Discipline Committee of the Maine Medical Association had violated the Association's by-laws in three critical respects.[2] The presiding Justice then reached the conclusion of law that said

---

1. The Justice (1) prohibited the ". . . circulating, forwarding or distributing the report of the . . . Committee dated March 27, 1974 as it pertains to plaintiff, and" (2) ordered that each of the defendants, except for their attorneys of record, ". . . expunge from their records said report and any references thereto, that copies of this Order and the Findings of Fact and Decree of . . . [the] Court be sent by Defendants to each person or organization to whom the original report was sent, and that all copies of said report now in the hands of defendants or within their control, now or in the future, except one copy in the hands of defendants' attorneys of record, be finally and permanently suppressed."

2. These by-law violations were: (1)

"The Bylaws of the Defendant Association provide that the Defendant Committee shall urge disposition of ethical complaints at the local County Society level, by County Society officers. Defendant Trembly and the Defendant Committee made no effort to refer the complaint of the Department of Health & Welfare in Plaintiff's case to the appropriate Component Society, the Kennebec County Medical Society."

(2) The Ethics and Discipline Committee wrongly undertook the *investigatory* tasks involved in the requests made to it by the State of Maine Department of Health and Welfare since

"actions . . . were a nullity under the Defendant Maine Medical Association's own internal rules."

■ The presiding Justice's findings as to the factual occurrences held to be violations of by-laws were adequately supported by evidence and are, therefore, here conclusive. The Justice's interpretation of the meaning of the by-laws, as applicable to the factual occurrences, was correct. Also correct was the presiding Justice's conclusion of law regarding the nullity of defendants' actions as a basis for judicial intervention to grant the injunctive relief here ordered.

Courts have relied on various rationales to justify their intervention to control the activities of private associations.[3]

For present purposes, since the by-laws of the Maine Medical Association here taken to be applicable are consonant with statutory and constitutional mandates and violate no general public policy of this State, they provide a proper basis for application of the "contract" rationale traditionally relied upon to justify judicial intervention to control the activities of private corporations. This Court recently utilized this "contract" approach in *Libby v. Perry*, Me., 311 A.2d 527 (1973), holding that the by-laws of a private association

"provided they are not unreasonable, nor contrary to public policy nor to constitutional or statutory requirements, . . . [are] a valid enforceable con-

tract between the members and the association . . . [which] govern their mutual rights and liabilities." (p. 532)

■ Thus, insofar as they here imposed obligations and restrictions upon the Association, the Association's by-laws are contractual terms cognizable, and enforceable, by a Court in accordance with the principles of contract law.

It is not material that the Department of Health and Welfare may have requested the Ethics and Discipline Committee to investigate particular facets of Dr. Gashgai's medical practice and conduct without knowledge of, or relation to, whether Dr. Gashgai was a member of the Maine Medical Association. The crucial point is that Dr. Gashgai was in fact a member of that Association. As such member, and specifically in reference to an investigation of his activities in the conduct of the practice of medicine undertaken by one of the standing committees of the Maine Medical Association in ostensible furtherance of purposes for which the Association exists, Dr. Gashgai was entitled to the protections afforded by the by-laws of the Association as the terms of a contract between the Association and him. Violations of the by-laws in the Association's dealings with Dr. Gashgai are thus breaches of contract specifically relating to Dr. Gashgai which he is legally entitled to remedy by resort to the Courts.

■ It was not here requisite, as a precondition of obtaining judicial relief, that

"[t]he Bylaws of the Defendant Association provide that the Defendant Committee shall have 'no power or authority' to act upon any complaint or claim or case referred to it where the facts of the complaint are or may become the basis for an action in tort against the doctor whose conduct is being investigated until and unless any case which should arise is finally disposed of."
(3) The Ethics and Discipline Committee wrongly undertook the *investigatory* tasks involved in the requests made to it by the State of Maine Department of Health and Welfare since

"[t]he Bylaws of the Defendant Association provide that the 'primary duty' of the Defendant Committee is to give careful consideration and study to methods and practices which tend to eliminate justifiable complaints against the profession or individual members of the medical profession on the desirability of following those recommended methods and practices."

3. 76 Harv.L.Rev. 983, et seq. contains an extensive review of the matter in its evaluation of "Developments in the Law" concerning "Judicial Control of Actions of Private Associations."

Dr. Gashgai exhaust remedies open to him within the Maine Medical Association.

■ This principle of exhaustion of internal remedies, as generally followed in cases in which Courts are asked to assert control over private associations is, like the doctrine of "exhaustion of administrative remedies" to which it bears a degree of kinship,[4] a principle of policy rather than a limitation of the Court's jurisdiction of the subject-matter. *Cf. State of Maine ex rel. Attorney General and the Board of Environmental Protection v. R. D. Realty Corporation,* Me., 349 A.2d 201 (1975).

·As policy, the "exhaustion" requirement has been subject to a long and firmly established exception rendering it inapplicable in situations in which the Court may readily discern a plain, and not insignificant, violation of the private association's constitution or by-laws. The conceptual rationale behind this exception is that when a Court confronts a plain and substantial violation of the constitution or by-laws of a private association, the Court has been provided with the private association's own antecedent stamp of the nullity of the actions in question as violative of the ·basic principles by which the association is governed. *California State University, Hayward v. National Collegiate Athletic Association,* 47 Cal.App.3d 533; 121 Cal.Rptr. 85 (1975); *Niner v. Hanson,* 217 Md. 298, 142 A.2d 798 (1958); *Junkins v. Local Union No. 6313,* 241 Mo.App. 1029, 271 S.W.2d 71 (1954); *Morris v. Peters,* 203 Ga. 350, 46 S.E.2d 729 (1948); *Smetherham v. Laundry Workers' Union,* 44 Cal.App.2d 131, 111 P.2d 948 (1941); *Abdon v. Wallace,* 95 Ind.App. 604, 165 N.E. 68 (1929); *Rueb v. Rehder,* 24 N.M. 534, 174 P. 992 (1918); see: *Van Daele v. Vinci,* 51 Ill.2d 389, 282 N.E.2d 728 (1972).

It would be, therefore, an exercise in dilatory formalism were the Court to defer

its own action to await further action from within the Association. There is no need of any additional expertise, as might be brought to bear by the further internal functioning of the Association, to enable the Court to recognize that the Association's

". . . functionaries have operated outside their proper sphere; thus the member's legal status has not been altered, there is nothing to appeal from, [within the Association]",

and, hence, the Court may justifiably conclude that it should

". . . secure the plaintiff his rightful position at once."

See: 76 Harv.L.Rev. 983 (supra, n. 3) at p. 1073.

Further, the Court would be perpetrating a special anomaly were it in the instant circumstances to require that plaintiff exhaust procedures internal to the Association since the actions here taken in violation of the Association's by-laws were not confined within the Association but reached outside to involve other public and private agencies. The report containing the conclusions of the Association's Ethics and Discipline Committee was transmitted to external bodies having power, tangibly and intangibly, to impair Dr. Gashgai's opportunity to earn a livelihood and practice his chosen profession; indeed, one of these agencies, relying on the Committee's report, had already taken steps in this direction by subjecting Dr. Gashgai's invoices to "constant surveillance."

In such context, as the United States Court of Appeals for the District of Columbia Circuit stressed in *Marjorie Webster Junior College, Inc., v. Middle States Association of Colleges and Secondary Schools, Inc.,* 139 U.S.App.D.C. 217, 432 F.2d 650 (1970):

---

4. These "exhaustion" doctrines are somewhat related insofar as they both reflect an underlying judicial policy of deferring to an ex-

pertness which courts attribute to the other bodies involved.

"The increasing importance of private associations in the affairs of individuals and organizations has led to substantial expansion of judicial control over 'The Internal Affairs of Associations not for Profit.' Where membership in, or certification by, such an association is a virtual prerequisite to the practice of a given profession, courts have scrutinized the standards and procedures employed by the association notwithstanding their recognition of the fact that professional societies possess a specialized competence in evaluating the qualifications of an individual to engage in professional activities. . . .

". . . the extent to which deference is due to the professional judgment of the association will vary both with the subject matter at issue and with the degree of harm resulting from the association's action." (pp. 655, 656)

See also: *Falcone v. Middlesex County Medical Society,* 34 N.J. 582, 170 A.2d 791 (1961).[5]

The judgment of the Superior Court is affirmed.

The entry is:

*Appeal denied.*

All Justices concurring.

---

5. In *Falcone* the Court made the cogent observation:

"When courts originally declined to scrutinize . . . practices of membership associations they were dealing with social clubs, religious organizations and fraternal associations. Here the policies against judicial intervention were strong and there were no significant countervailing policies. When the courts were later called upon to deal with trade and professional associations exercising virtually monopolistic control, different factors were involved. The intimate personal relationships which pervaded the social. religious and fraternal organizations were hardly in evidence and the individual's opportunity of earning a livelihood and serving society in his chosen trade or profession appeared as the controlling policy consideration." (p. 799)