**NORTH JERSEY SECRETARIAL SCHOOL, INC., et al., Plaintiffs,**

v.

**NATIONAL ASSOCIATION OF TRADE AND TECHNICAL SCHOOLS, et al., Defendants.**

**Civ. A. No. 84–3232.**

United States District Court, District of Columbia.

Nov. 20, 1984.

**478**

Courts Oulahan, Washington, D.C., for plaintiffs.

James M. Johnstone, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

THOMAS F. HOGAN, District Judge.

This matter is before the Court on plaintiffs' motion for partial summary judgment or preliminary injunction and defendants' cross-motion for summary judgment. Affidavits and relevant documents have been considered by the Court, as have the parties' supporting memoranda of law. Oral argument was heard on November 8, 1984, at which time the Court granted summary judgment for the defendant on all counts. This opinion will supplement the Court's ruling from the bench.

The underlying factual dispute in this case is somewhat complex, involving as it does the financial interrelationship of four or more parties including the North Jersey Secretarial School, Inc. (N.J.S.S.), the American Technical Institute School (A.T.I. School), and the past and present owners of the A.T.I. School. However, the Court need not, and in fact, may not, reach the underlying issue of the "financial stability" of A.T.I. School. Nevertheless, a brief synopsis of the undisputed factual background of this litigation is appropriate.

### Factual Background

A.T.I. School is a trade and technical school in Pittsburgh, Pennsylvania. A.T.I. School, formerly operated by the American Technical Institute through its general partner Jerry Kokalis, was sold in February, 1984 to plaintiff Jean-Claude Levy, owner and operator of plaintiff N.J.S.S. of Passaic Park, New Jersey. At the time of the sale, the A.T.I. School was accredited by the defendant National Association of Trade and Technical Schools, Inc. (NATTS). NATTS is a non-profit organization engaged in the process of evaluating and accrediting eligible trade and technical schools. Accreditation by NATTS, as a recognized national accrediting agency, is a prerequisite to the receipt of federal (Department of Education) financial assistance. See 34 C.F.R. § 603.1.

Unknown to plaintiffs, the continued accreditation of A.T.I. School was in jeopardy at the time of their purchase because of NATTS' concern with the school's financial stability. This uncertainty about the financial stability of A.T.I. originated at the time of the initial accreditation in 1982. See Declaration of Bernard H. Ehrlich at 4. Finally, based on a "major concern with apparent discrepancies between [A.T.I.'s] June 30 and September 30, 1983 statements," NATTS issued a show cause order on February 13, 1984 directing A.T.I. School to submit balance sheets, operating statements and other financial data necessary to insure NATTS of the continued financial stability and reliability of the school. The penalty for failure to comply with these requests was immediate removal of accreditation. Following a review of the incomplete submission by A.T.I., NATTS deferred action on its show cause order and requested, by letter dated May 15, that A.T.I. supplement its original filing.

In response to these letters, Mr. Kokalis submitted a response notifying NATTS of the change in ownership. It is undisputed that neither Mr. Kokalis nor Mr. Levy supplied the requested balance sheets and operating statements. On May 30, approximately four months after the sale of the school, the new owner and plaintiffs in the present action, Mr. and Mrs. Levy, learned of the "true situation," and began submitting voluminous change of ownership forms and supporting documentation. Plaintiffs submitted, *inter alia*, an unaudited A.T.I. School balance sheet, which,

according to the preparing accountant, was "merely a representation of information supplied by management." Current financial information on N.J.S.S. and other schools owned by Mr. Levy was also provided. However, plaintiffs do not dispute that certain information, including a proper balance sheet for A.T.I. showing its financial condition after the sale as well as the information requested in the show cause orders, was *not* provided to NATTS prior to the July, 1984 deadline.

Based on the "failure to satisfy the show cause order," A.T.I. School was removed from the accredited list. In taking this action, the NATTS Accrediting Commission did not consider the information submitted in reference to the change of ownership. A.T.I. then submitted a notice of appeal as well as a motion to extend the time from August 29 to September 24, 1984 "to file a documented appeal, including [the] required financial statements." The motion was denied. However, counsel for NATTS informed plaintiffs that "notwithstanding deadlines for perfecting the appeal, [plaintiffs] could and should bring whatever financial information [they] could develop concerning the operating and financial condition of the school under its ownership to the appeals panel hearing and that it would be considered." [1] Ehrlich Affidavit at 12.

An appeals panel was selected without objection and, following a short postponement, a hearing was held on October 17, 1984. Mr. and Mrs. Levy, as well their legal counsel and accountant, appeared at the hearing and presented oral and written information to the panel. Despite the efforts of the plaintiffs, the appeals panel voted unanimously to uphold the Commission. Perhaps the most important factor in this decision was the fact that the required financial data for the A.T.I. School had still not been submitted. *See* Janssen Affidavit.

### The Proceedings In This Court

Within days after receiving notice of the appeals panel decision, plaintiffs filed their "Complaint for Damages, Declaratory Judgment, and Injunctive Relief." [2] The complaint asserts three causes of action: 1) Breach of contract; 2) Breach of fiduciary duty; 3) Intentional interference with contractual relations.

The first two counts of the complaint are based on the alleged breach of "Procedural Rules and Accreditation Standards" of NATTS. Essentially, plaintiffs claim that NATTS, as a "quasi-public" institution, owes its members a general duty to provide fair and impartial procedures, to base its decisions on the evidence, and to avoid arbitrary and capricious actions. The plaintiffs' argument finds support in the case law, *see Marjorie Webster Junior College, Inc. v. Middle States Association of Colleges and Secondary Schools, Inc.,* 432 F.2d 650, 655 (D.C.Cir.), *cert. denied,*

---

1. Counsel for plaintiff has argued that he believes this representation to be inaccurate. Plaintiffs' Statement of Points and Authorities in Support of Motion for Partial Summary Judgment at 4. Of course, the Court is not technically bound by statements not made as affidavits based on personal knowledge. *See* Fed.R.Civ.P. 56(e). Nevertheless, accepting the representations of plaintiffs' counsel as to his recollection, it is undisputed that plaintiffs *in fact* submitted additional financial information to the Appeals Panel and that that information was actually considered by that body. Affidavit of Charles P. Janssen. Plaintiff has never argued that pertinent information was withheld because of any statements by defendants. Because the information in question was *actually* received and considered, the question of whether defendant's counsel originally stated that such information would not be considered is not particularly important.

2. Plaintiffs also requested a Temporary Restraining Order be issued to prevent further action being taken with respect to the disaccreditation. At the hearing on plaintiffs' motion for a TRO, the parties entered into an agreement whereby defendants would refrain from acting on or publicizing the disaccreditation and plaintiffs would agree to withdraw their motion for a TRO. Both parties also agree to an expedited hearing scheduling under which defendants' motion for summary judgment would be consolidated with plaintiffs' motion for a preliminary injunction. This compromise allowed the parties and the Court to develop the law and facts and to consider the issues in a more organized fashion.

400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). *See also Marlboro Corporation v. Association of Independent Colleges and Schools, Inc.,* 556 F.2d 78 (1st Cir.1977); *Rockland Institute, Division of Amistad Vocational Schools, Inc. v. Association of Independent Colleges and Schools,* 412 F.Supp. 1015 (C.D.Calif.1976); *Parsons College v. North Central Association of Colleges and Secondary Schools,* 271 F.Supp. 65 (N.D.Ill.1967); *Wisconsin Avenue Associates, Inc. v. 2720 Wisconsin Avenue Cooperative Association, Inc.,* 441 A.2d 956, 963 (D.C.1982) (fiduciary concepts may apply to membership in voluntary association); *Gashgai v. Maine Medical Association,* 350 A.2d 571 (Me.1976) (bylaws of voluntary association may be judicially enforced as contract), and the defendants do not contest the plaintiffs' position on the law. In fact, defendants have used the term "due process" to describe their duty to the plaintiffs during the accreditation process. The Court finds this analogy appropriate.

The flaw in the plaintiffs' argument to the Court is that defendant has provided all the process due. Plaintiff argues that the accrediting commission wrongfully refused to consider the change of ownership in connection with its hearing on the disaccreditation proceeding. However, it is clear that NATTS' bylaws and procedural rules treat the disaccreditation process and change of ownership process differently, with the latter requiring an extensive investigation including on-site visits to the school. *See* Exhibit 1 to Plaintiffs' Statement of Points and Authorities in Support of Motion for Restraining Order at 4 and Change of Ownership Form, Exhibit B of Erlich Declaration at 21. While NATTS could have postponed the hearing on disaccreditation for the months or weeks it would have taken to complete the change of ownership process, it was not bound to do so by its rules or by any generally accepted notion of due process. In fact, it is undisputed NATTS told plaintiff it would

engage in an accelerated change of ownership review process, which offer plaintiff has failed to accept. Clearly, it is not the place of a federal court to instruct an experienced, professional body in the proper criteria to consider in an accreditation proceeding. NATTS is fully within its rights in treating the change of ownership application from A.T.I. in the manner provided in its rules; that is, it may process the application as an initial request for accreditation.

Plaintiffs also argue that the NATTS appeals panel treated them unfairly by failing to make the change of ownership information "part of the official file" and in failing to "consider the presentation" in reaching the decision. NATTS responds to this argument on two levels. According to NATTS' procedural rules, the appeals panel "is limited to consideration of only the evidence in the record up to the time of the commission's decision" in deciding whether to reverse the commission. Exhibit B of Ehrlich Declaration at 18. Additionally, the panel may, in its discretion, informally consider additional evidence in deciding whether to remand the case for additional consideration. Thus NATTS argues that it did not *have* to consider the evidence received after the commission's decision.

In any case, NATTS has demonstrated to the Court's satisfaction that the "ownership material was in fact considered by the appeals panel." *See* Janssen Affidavit at 2–3. For a variety of reasons, *see id.* at 4–7, the appeals panel believed that the necessary proof of financial reliability was lacking and that "it would require a new and complete accreditation process to determine all the facts ...." *Id.* at 8. This conclusion is based upon fact and is well within the scope of the appeals panel's expertise and authority. The Court will not challenge it.

The remainder of plaintiffs' argument might be characterized as a generalized "lack of fairness" complaint.[3] However, a

---

**3.** There is some suggestion that the Commission, the Appeals Board, and NATTS are in

some way biased or prejudiced against plaintiffs. Aside from insinuations to that effect

careful examination of the statements of fact and supporting documents leads the Court to conclude that there is no redressable error in the procedures afforded to plaintiffs. NATTS provided plaintiffs with ample notice to enable them to prepare; a detailed written complaint was provided. Plaintiffs had repeated opportunities to present evidence and argument in writing; plaintiffs were afforded an oral hearing with the assistance of counsel. Finally, plaintiffs were given the opportunity to appeal both orally and in writing. This treatment satisfies the contours of due process as it applies to the workings of government; the Court believes that such procedural safeguards also satisfy whatever contractual or fiduciary responsibilities arise from the contracts, bylaws, and constitution of NATTS. *Cf. Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Thus NATTS has not violated the plaintiffs' right to a fair hearing either by violating its own rules or by infringing the generalized standards of due process established by the courts.

The Court is not without sympathy for the difficult position in which the new owners of A.T.I. School find themselves. Nevertheless, the disaccreditation of the school is not the result of any unlawful procedural actions on the part of defendants.[4] Nor can the Court say that the result reached was arbitrary, capricious or not based on substantial evidence. In fact, at the time of the argument in this case, NATTS had not yet received the operating statements and other A.T.I. School financial data which it had requested in May. Given the importance of the school's financial stability to the students, the motivation for NATTS' decision to withdraw accredita-

tion at this time is easily understandable. Defendants are entitled to summary judgment on the first two counts.

■ The Court will also enter summary judgment for the defendants on Count 3 of the complaint: intentional or improper interference with present or prospective contractual relations. Defendant NATTS, through the affidavits of its agents, has demonstrated that it acted without malice or intent to injure plaintiffs. Because recovery under this claim requires a showing of intentional conduct undertaken with the desire or purpose of interfering or appropriating benefits for one's self, *see Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895, 899 (1971); W. Prosser, The Law of Torts, 938–42 (4th ed. 1971), and plaintiff has presented no affidavits or evidence in support of its position that such intent existed, summary judgment for the defendants is appropriate.

Moreover, even if plaintiffs could demonstrate the necessary intent on the part of the defendants, the conduct in question would as a matter of law fall within the "public interest" privilege. *See* Prosser, Torts at 944. NATTS, as an accrediting agency, operates to advance the public interest by upholding and enforcing the standards of its member schools. Although its actions may be harmful to an individual member who loses accreditation, the process as a whole is worthwhile and, as long as it is undertaken reasonably and with adequate safeguards, the accreditation process should be immune from attack.

Accordingly, it is this 20th day of November, 1984, hereby

ORDERED that defendants' motion for summary judgment is granted; and it is

---

made in the legal memoranda, there is no basis for the Court to consider these allegations. On the contrary, both General Counsel of NATTS and a member of the Appeals Panel have sworn under oath that they were unaware of the existence of (or basis for) any bias against plaintiffs. Neither NATTS itself nor any individual who acted upon plaintiffs' application was in competition with plaintiffs. In fact, plaintiffs approved of the composition of the appeals panel. In light of this uncontroverted evidence, the Court finds no evidence sufficient to raise a

genuine issue of material fact with respect to bias or prejudice against plaintiffs.

4. The Court takes notice of the fact that plaintiffs have filed suit against the former owners of the school in the Pennsylvania state courts. It is possible that plaintiffs' remedy lies with the seller who failed to disclose—and, according to allegations in this Court, actually covered up—A.T.I. School's financial problems.

FURTHER ORDERED that judgment be, and is, entered for the defendants.