STATE OF MAINE                    SUPERIOR COURT
PENOBSCOT, SS.                    CIVIL ACTION
                                 Docket No. CV-05-274

                                 JUP-(-5I/~10/29/05

Michael Celli et al.,
        Plaintiffs

FILED & ENTERED
SUPERIOR COURT
DEC 29 2005
PENOBSCOT COUNTY

v.                               Order

Friends of Fort Knox,
        Defendant


        Pending before the court are the plaintiffs' motion for preliminary injunction and

the defendant's two motions to dismiss. Hearing on the former motion was held on

December 16, 2005. The court has taken the latter motions under advisement and has

reviewed the parties' submissions in support of and in opposition to them. For the

reasons set out below, the court denies the defendant's motion to dismiss for failure to

state a claim, grants the defendant's motion to dismiss plaintiff Mary Sullivan as party-

plaintiff for lack of standing, denies the motion to dismiss plaintiff Michael Celli as a

party-plaintiff, and denies the motion for preliminary injunction.

        The defendant's two motions to dismiss challenge, first, the sufficiency of the

allegations to establish a basis for relief, and, second, the plaintiffs' standing to pursue

the claim alleged here. "A motion to dismiss tests the legal sufficiency of the complaint."

*McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994). In analyzing those motions, the court

takes the allegations to be true. *In re Wage Payment Litigation*, 2000 ME 162, ¶ 3, 752

A.2d 217, 220. From this starting point, the complaint then is examined "in the light

most favorable to the plaintiff[s] to determine whether it sets forth elements of a cause of

action or alleges facts that would entitle the plaintiff[s] to relief pursuant to some legal

theory." *McAfee*, 637 A.2d at 465. A dismissal is proper "only when it appears beyond

doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in

support of his claim." *Hall v. Board of Environmental Protection*, 498 A.2d 260, 266

1

(Me. 1985). *See also Heber v. Lucerne-in Maine Village Co.,* 2000 ME 137, ¶ 7, 755 A.2d 1064, 1066.

In their complaint, the plaintiffs allege that in November 2005, the defendant organization, a non-profit corporation, conducted an election to remove existing Board members and directors and to replace them with others. They further allege that the election was not conducted in the manner provided by the defendant's corporate by-laws. They contend, for example, that in violation of the election procedure set out in the by-laws, members of the organization were permitted to cast ballots even though some of those voters were not physically present at the meeting where the election was held. Arguing that the only votes that are valid were those cast by members who were physically present at the election meeting, the plaintiffs challenge the constitution of the Board that is based on the tabulation of all votes cast. More specifically, they allege that when the votes are counted in the manner they claim is proper, five of the thirteen Board members were removed in the election. Plaintiff Mary Sullivan is one of the eight who had served as a Board member but was not removed, and plaintiff Michael Celli is one of the three or five[1] whom the plaintiffs allege was voted to become a new Board member upon the removal of several of the existing members through the election process. In their complaint, the sole form remedy requested by the plaintiffs appears to be interim injunctive relief in the form of a court order establishing that the Board's membership is constituted in the eight retained members and three new members that they claim were properly elected. The court takes this relief to be the ultimate disposition they seek in this action.

The defendant first moves to dismiss the substantive claim based on a close analysis of the provisions and structure of Title 13-B, which the parties appear to apply here because of the nonprofit nature of the corporate defendant. In essence, the defendant contends that the terms of Title 13-B, particularly when compared to provisions governing other types of corporations, must be read in a way that would not authorize the instant challenges to the election procedure at issue. However, as the plaintiffs point out,

---

[1] In their complaint, the plaintiffs raise an issue regarding the number of people who should serve on the Board altogether. This issue, however, is not relevant to the issues raised in the motions at bar and need not be addressed here.

at least as a matter of common law, an association is held to have a contractual relationship with its members, and the terms of that contract are laid out in the corporate by-laws. *See Libby v. Perry*, 311 A.2d 527, 532 (Me. 1973); *Gashgai v. Maine Medical Association*, 350 A.2d 571, 575 (Me. 1976). This establishes the legal basis and framework for a claim that the organization failed to comply with its by-laws.

The defendant relies on the terms of 13-B M.R.S.A. § 711(2)[2] in support of its argument that an officer or corporate agent does not secure contract-based rights by the mere fact of an election or appointment to that position. The effect of this section, however, must be viewed in light of section 711(1), which expressly reserves the possibility that an officer or agent may have a contractual interest in that position. Section 711(2), therefore, must be read to negate the existence of any such contractual rights that would result simply because the officer or agent was elected or appointed to that position. Rather, a contractual interest must derive from a different source. Under *Gashgai* and *Libby*, that source is the by-laws for the corporation. Therefore, the court concludes that there exists a cause of action against a nonprofit corporation based on that entity's alleged failure to comply with election procedures established by the corporate by-laws.

This leads to the question of whether the plaintiffs have standing to pursue such a claim. As it has been examined in federal authorities, the concept of standing is both constitutional and prudential in origin. The participation of a party with standing ensures that a court will be presented with a "case and controversy," in satisfaction with the federal constitutional element of jurisdiction. In that way, advocacy by a party with standing provides assurance that that party will be motivated to address the contested issue with seriousness and maturity, because that party has a real interest at stake. *See generally Clinton v. City of New York*, 524 U.S. 417, 429, 141 L.Ed.2d 393, 408 (1998). *See also Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 687, 37 L.Ed.2d 254, 269 (1973) (". . . .[T]he party seeking review [must] be himself among the injured, for it is this requirement that gives a litigant a direct stake in the controversy and prevents the judicial process from becoming no more than a vehicle for the vindication of

---

[2] Section 711(2) provides, "Election or appointment of an officer or agent shall not of itself create contract rights."

3

the value interests of concerned bystanders."); *Baker v. Carr*, 369 U.S. 186, 204, 7 L.Ed.2d 663 (1962) (to have standing, a party must allege "such a personal stake in the outcome of the controversy as to assure that concerted adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions."). Even when the notion is standing is examined in a state case, that is, one that does not invoke constitutionally based jurisdictional considerations relevant to the federal courts, the same considerations apply, although from a prudential perspective. *See, e.g., Hathaway v. City of Portland*, 2004 ME 47, ¶ 13, 845 A.2d 1168, 1171 (holding that a party did not have a justiciable claim and thus did not have standing, because she could allege only "at best an abstract disagreement" rather than "a concrete, certain or immediate problem.").

Here, Campbell's position as a Board member will not be affected by the outcome of this proceeding. Whether or not she were to prevail on her claim that the election process did not conform to the requirements of the by-laws, her membership on the Board will remain intact. She may well disagree with the format for the election implemented by the defendant. Nonetheless, because has suffered no injury as a result of that format, she has no personal stake in the outcome of this case, and her contentions therefore can only be characterized as abstract. Consequently, the allegations in her complaint could not establish that she is a proper party, and she must be dismissed as a party-plaintiff.

Celli's position in this case, however, is qualitatively different from Campbell's. When his interest is viewed as favorably as the complaint allows, that pleading demonstrates that his entitlement to membership on the Board will rise or fall as a function of the claim he asserts here. His stake in this proceeding is more than abstract. He has raised a claim that could have a direct effect on an interest that is personal and real to him. Thus, the claim generates a genuine controversy, supporting the conclusion that because of that direct stake, he is genuinely motivated to advocate his position in a way that is expected from persons with standing. The defendant's motion to dismiss him as a party must be denied.

This analysis thus allows consideration of the merits of the motion for preliminary injunction, for which Celli is now the sole proponent because Campbell is no longer a

4

party to this action. In order to obtain injunctive relief, the movant must establish that irreparable injury will result from the denial of that remedy; that the irreparable injury would exceed any damage caused to the defendant by the issuance of such a injunctive order; that there is a likelihood of success on the merits of the claim; and that the public interest will not be adversely affected by the issuance of an injunction. *Ingraham v. University of Maine at Orono*, 441 A.2d 691, 693 (Me. 1982). Celli has failed to establish that the absence of interim injunctive relief will result in irreparable harm, and for that reason, without addressing the remaining elements of the *Ingraham* standard, the court denies his motion.

Celli's essential contention in support of his claim of irreparable injury is that the leadership of the defendant organization is uncertain because of the challenge to the election process he pursues here. As a result, he argues, the defendant is unable to conduct some of its normal activities. Of those organizational activities that he claims have been stalled, the one that has the most significance is the possible renewal of an agreement with the Maine Bureau of Parks and Lands (BPL), under which the defendant performs certain functions and provide certain services that otherwise would be the State's responsibility. These services include operating the control and admission booth at Fort Knox, collecting admission fees from visitors, conducting interpretive tours of Fort Knox during the summer, and providing outreach and other educational programs. Additionally, an observation tower will be built as part of the Waldo-Hancock bridge that is now under construction. The Departments of Transportation and Conservation had been in some discussions with the defendant with an eye toward creating a relationship under which the defendant would participate in the operation of the tower, which will overlook Fort Knox.

BPL has remained keenly neutral in the dispute at bar. Nonetheless, because of the very fact of the dispute over the leadership of the defendant, it has declined to carry on the negotiations that would be intended to arrive at a services contract for 2006 and at an agreement with the defendant for the operation of the observation tower. The services contracts historically have become effective in the spring of each year. Celli argues that injunctive relief is needed in order to establish a group of decisionmakers for the defendant with whom BPL and other relevant agencies could work.

5

This factual contention, however, is undermined by testimony from BPL's representative that BPL will plan for the upcoming season without involvement from the defendant, as long as this case remains pending in court. Presently, BPL is developing contingency plans to proceed with the operation of Fort Knox without the participation and assistance from the defendant that it provided in the recent past. The issuance of an order of injunction will not change that approach because so long as this case remains pending, there remains an outstanding question of who can speak for the defendant. With that uncertainty, BPL understandably has chosen to proceed on its own in making its plans for the operation of Fort Knox in 2006. Thus, whether or not the court grants Celli's motion for preliminary injunction, due to the very pendency of this case BPL will not delegate any of its operational and management functions to the defendant. Consequently, the harm that Celli contends will be caused by the absence of a preliminary injunction, namely, the loss of the defendant's opportunity to participate in the operation of Fort Knox in 2006, will obtain irrespective of whether such an order issues.

Beyond this, the evidence is insufficient for the court to conclude that other effects of the dispute in the Board's membership rise to the level of irreparable harm.

The entry shall be:

For the foregoing reasons, the defendant's motion to dismiss for failure to state a claim is denied. The defendant's motion to dismiss for lack of standing is granted in part and denied in part. Plaintiff Mary Campbell is dismissed as a party for lack of standing. Beyond this, the defendant's motion to dismiss for lack of standing is denied. The plaintiff's motion for preliminary injunction is denied.

Dated: December 29, 2005

_____
Justice, Maine Superior Court

MICHAEL CELLI  - PLAINTIFF                          SUPERIOR COURT
42 GETTYSBURG AVE                                   PENOBSCOT, ss.
BREWER ME 04412                                     Docket No  BANSC-CV-2005-00274
Attorney for: MICHAEL CELLI
ARTHUR GREIF  - RETAINED 11/21/2005
GILBERT & GREIF                                     **DOCKET RECORD**
82 COLUMBIA ST
PO BOX 2339
BANGOR ME 04402-2339


MARY CAMPBELL DISMISSED  - PLAINTIFF
834 STATE ST #7
BANGOR ME 04401
Attorney for: MARY CAMPBELL DISMISSED
ARTHUR GREIF  - RETAINED 11/21/2005
GILBERT & GREIF
82 COLUMBIA ST
PO BOX 2339
BANGOR ME 04402-2339



vs
FRIENDS OF FORT KNOX - DEFENDANT
P O BOX 456,
BUCKSPORT ME 04416
Attorney for: FRIENDS OF FORT KNOX
JEFFREY SILVERSTEIN  - RETAINED 11/29/2005
RUSSELL SILVER & SILVERSTEIN
145 EXCHANGE STREET, SUITE 3
BANGOR ME 04401-6505



Filing Document: COMPLAINT                    Minor Case Type: GENERAL INJUNCTIVE RELIEF
Filing Date: 11/21/2005

## Docket Events:
11/21/2005 FILING DOCUMENT - COMPLAINT FILED ON 11/21/2005
           COMPLAINT AND VERIFIED APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY
           INJUNCTION WITH EXHIBIT A.

11/21/2005 Party(s):  MICHAEL CELLI
           ATTORNEY - RETAINED ENTERED ON 11/21/2005
           Plaintiff's Attorney: ARTHUR GREIF

11/21/2005 Party(s):  MARY CAMPBELL DISMISSED
           ATTORNEY - RETAINED ENTERED ON 11/21/2005
           Plaintiff's Attorney: ARTHUR GREIF

11/21/2005 Party(s):  MICHAEL CELLI,MARY CAMPBELL DISMISSED
           MOTION - TEMP RESTRAINING ORDER FILED ON 11/21/2005
           PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION WITH
           PROPOSED ORDERS.

11/21/2005 Party(s):  MICHAEL CELLI,MARY CAMPBELL DISMISSED
           MOTION - MOTION PRELIMINARY INJUNCTION FILED ON 11/21/2005
           PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION WITH

STATE OF MAINE                       SUPERIOR COURT
PENOBSCOT, SS.                       CIVIL ACTION
                                     Docket No. CV-05-274

                                     PEN-JLH - 3/21/06


Michael Celli et al.,
    Plaintiffs


        v.                           Order (Motion for Temporary
                                     Restraining Order)

Friends of Fort Knox,
    Defendant


        The plaintiffs have filed motions for a temporary restraining order and for

preliminary injunction.[1]  Conference of counsel was held this date to establish procedural

tracks for these motions.  It was agreed that, because the plaintiffs seek immediate

consideration of their motion, the court would act on the motion for TRO based only on

the plaintiffs' submissions.  If the defendant took the position that any such ruling

aggrieved it, then it would then have an opportunity to be heard on the motion by filing a

response to the motion, or by moving to dissolve a restraining order pursuant to

M.R.Civ.P. 65(a), or by invoking both of these mechanisms.  The motion for preliminary

injunction shall be governed by the conventional process for filings by the parties and

hearing if required.

        Consequently, the court has reviewed the plaintiffs' submissions in support of

their motion for TRO and concludes that they have not established a basis for the

issuance of injunctive relief.  In order to obtain injunctive relief, the movant must

establish that irreparable injury will result from the denial of that remedy; that the

---

[1] The motion for preliminary injunction rests on the same factual and legal bases as the
motion for TRO.  The plaintiffs filed the former motion on March 17.  Following a
conference of counsel held on March 17 after they filed the motion for preliminary
injunction, the plaintiffs chose also to file the motion for TRO in order to allow an
expeditious consideration of their request for interim injunctive relief rather than
invoking the more time-consuming process associated with the motion for preliminary
injunction.

1

irreparable injury would exceed any damage caused to the defendant by the issuance of such a injunctive order; that there is a likelihood of success on the merits of the claim; and that the public interest will not be adversely affected by the issuance of an injunction. *Ingraham v. University of Maine at Orono*, 441 A.2d 691, 693 (Me. 1982). Here, the plaintiffs seek an order enjoining the defendant from dissolving itself.[2] The record on the motion at bar and the arguments of the plaintiffs do not establish that the dissolution will cause irreparable injury. There is no suggestion, for example, that the activities and responsibilities of the defendant would not be assumed by some other entity, either one that exists now or that would be created to fill the vacuum. The plaintiffs state baldly that the dissolution of a corporation results in irreparable harm because the dissolution cannot be reversed. This, however, does not establish that the fact of dissolution, even if irreversible, rises to the level of irreparable harm, even in the context of the laudable mission of an organization associated with an important historical site.[3] Without any evidence of the real-world effects of a dissolution of the defendant, the plaintiffs have not established entitlement to a restraining order.

The plaintiffs also fail to demonstrate that any consequences of a dissolution will deprive them of a remedy at law. The specific effect of dissolution noted by the plaintiffs is that it would trigger the authority of the defendant to direct its assets to another non-profit entity, rather than to the State's Department of Parks and Recreation as an earlier set of corporate by-laws required. If the purpose of this observation is to suggest that the

---

[2] In their motion, the plaintiffs also seek an order enjoining it "from attempting to cut short the two year director terms of" one of the plaintiffs and two others. During the conference of counsel held this date, plaintiffs' counsel advised that the plaintiffs are not pressing this element of relief through the TRO motion. Thus, the court does not address this issue here.

[3] In a separate motion filed earlier in this proceeding, the plaintiffs had argued that injunctive relief was needed to establish control over the management of the defendant because, with the instability caused by the dispute at bar, the State would refrain from entering into any arrangements for the defendant's involvement either in the Fort Knox facility during the upcoming season or in the observation tower of the new bridge adjacent to Fort Knox. Because the State will continue to decline to engage the defendant so long as this case is pending, whether an interim injunctive order is in place or not, the court concluded that this circumstance did not warrant the issuance of such an order. An examination of that issue is set out in more detail in the court's order dated December 29, 2005.

transfer of funds is a form of injury, then if such a transfer is ultimately demonstrated to have been improper, a remedy at law would likely arise.

The entry shall be:

For the foregoing reasons, the plaintiffs' motion for temporary restraining order is denied.

Dated: March 21, 2006

Justice, Maine Superior Court
Jeffrey L. Hjelm

3

MICHAEL CELLI ET AL VS. FRIENDS OF FORT KNOX
UTN:AOCSsr  -2005-0118845                    CASE #:BANSC-CV-2005-00274
--------------------------------------------------------------------------
MICHAEL CELLI                                                  PL
ATTY GREIF, ARTHUR  Tel# (207) 947-2223
ATTY ADDR:82 COLUMBIA ST PO BOX 2339 BANGOR ME 04402-2339


MARY CAMPBELL DISMISSED                                        PL
ATTY GREIF, ARTHUR  Tel# (207) 947-2223
ATTY ADDR:82 COLUMBIA ST PO BOX 2339 BANGOR ME 04402-2339


DONALD METTHE                                                  PL
ATTY GREIF, ARTHUR  Tel# (207) 947-2223
ATTY ADDR:82 COLUMBIA ST PO BOX 2339 BANGOR ME 04402-2339

_Friends of Fort Knox_
_George Kurr Esq      PO B 917 Bangor 942-4644_
_James Nixon Esq       "   "   "      "  "_
M=More, Space = Exit:M

Select the EXIT KEY for page selection line.