THE STATE, EX REL. PFEIFER, v. STONEKING ET AL.

(No. 668—Decided March 13, 1946.)

*Messrs. Vorys, Sater, Seymour & Pease* and *Mr. William L. Weber,* for relator.

*Mr. Clarke B. Barbour,* prosecuting attorney, *Mr. Clarence A. Graham* and *Mr. Don J. Hollingsworth,* for respondents.

PUTNAM, J. This is an action in mandamus, originating in this court, in which the relator, an elector and member of the democratic party and a resident of ward three of the city of Zanesville, seeks a writ compelling the respondents, the members of the board of elections of Muskingum county, to cause his name to be printed on the ballot to be voted on at the primary election on May 7, 1946, as a candidate for county central committeeman of the democratic party of Muskingum county from ward three of the city of Zanesville. The action involves a factional fight in that party for committee control in the county.

The facts briefly are as follows: Prior to February 6, 1946, the central committee was composed of 31 members, one each from the wards in the city of Zanesville and townships in the county. On December 4, 1945, at a meeting of the central committee at which 19 members were present, a resolution was adopted making six members of the committee a quorum for the transaction of business. On February 6, 1946, the last day upon which petitions for candidates for members

of the committee could be filed under the law, the central committee met, 11 members being present, and adopted a resolution in conformity to Section 4785-63, General Code, which resolution provided in part:

"The Muskingum County Central Committee as elected May 7, 1946, shall consist of one member from each election precinct including the city of Zanesville."

That resolution was immediately filed with the Muskingum County Board of Elections and shortly thereafter 109 petitions for candidates for the central committee from the precincts were filed with the board. The relator and 30 others filed from wards and townships. They did not file a written protest within the time prescribed, as provided in section two of Amended Substitute Senate Bill No. 216 of the 96th General Assembly, being known as the Soldier's Voting Law of 1945 (121 Ohio Laws, 40, 47). Evidently verbal protests were made and on February 7, 9 and 12 hearings were had by the county board of elections at which the relator and members of his faction were present and were represented by counsel. The adverse faction, represented by counsel, and the prosecuting attorney, who represented the board of elections, were also present. Substantially the same propositions were there raised as are here presented. The board of elections then determined that the resolution presented to them on February 6, 1946, by the central committee was a valid and legal resolution, accepted the 109 petitions filed from the precincts and declined to accept the petitions of the relator and the 30 others who filed from wards and townships. Whereupon this action was instituted and an alternative writ was granted.

The relator maintains and insists upon the following propositions:

1. The meeting of the central committee on February 6, 1946, was illegal and its actions were void because (a) no proper notice thereof was given, (b) any

action was void because no legal quorum was present, (c) no sufficient time was allowed, after the committee action, for filing of petitions in conformity thereto.

2. The action of the board of elections was arbitrary, illegal, an abuse of discretion and without authority of law.

The respondents claim with equal force that no arbitrary action was taken, that all proceedings were in accordance with law, that a proper quorum was present, and that the questions presented are political ones involving inter-party matters not justiciable in this action. It is urged also that the relator had an adequate remedy at law.

We find from the evidence adduced that the meeting of the committee on December 4, 1945, was duly called, that 19 of the 31 members of the central committee were present and that the resolution establishing six as a quorum of the central committee was adopted by a majority of those present. We find further that actual notice of the meeting of February 6 was given by postcards which were mailed to the township members on February 4th and to ward members on February 5th to the addresses on file with the secretary of the committee. We find also that the notice sent to Chairman Burriell was to his listed address but which address was known to the secretary to be incorrect, that Burriell had actual notice of the meeting by February 5th and that he was present in the hall outside the meeting, was invited to the meeting and refused to attend but stayed there and attempted to persuade other members of the committee not to attend. No other members of the committee complained of lack of notice of the meeting. The resolution was filed with the board of elections at 6:10 p. m. and the petitions were filed prior to 6:30 p. m. on February 6, 1946. We find further that the signatures to the 109 petitions, filed from the precincts, were acknowledged prior to

the time of the adoption of the resolution changing the representation on the county committee.

The questions then presented are:

1. Did the central committee at the meeting on December 4, 1945, have a right to adopt a rule of procedure whereby six of its members constituted a quorum and under that rule to take the action contemplated by Section 4785-63, General Code, designating the units of representation on the committee or any other action?

2. In the absence of legislation fixing a time when that action must be taken, can this court so determine?

3. Were the 109 petitions, filed from precincts and accepted by the respondents, invalid because they were acknowledged prior to the adoption of the resolution changing the representation?

4. Was the action of the respondents in accepting the resolution arbitrary, illegal, an abuse of discretion and without authority of law?

5. Had the relator an adequate remedy at law by filing a written protest under section two of amended Substitute Senate Bill No. 216, which filing he failed to do within the time prescribed?

It is established by the great weight of authority that political parties are voluntary organizations and in the absence of legislative enactment they are governed by their own usages and establish their own rules. (49 Corpus Juris, 1076.) In *State, ex rel. Webber,* v. *Felton,* 77 Ohio St., 554, at pages 579, 580, 84 N. E., 85, the court says:

"Political parties are voluntary organizations. They have been a law unto themselves, and they determine for themselves all questions of fairness and reasonableness and of party expediency, until the state interferes by legislation, and then no question can arise for judicial determination excepting out of the legislation."

The Legislature of Ohio, in Sections 4785-61 to 4785-66, General Code, has made certain regulations as to party controlling committees which are mandatory as far as that legislation goes but no farther. Section 4785-64, General Code, provides how a party central committee shall meet and organize initially, but as to other and following meetings the statute is silent. Consequently, the committee has a right to make its own rules as to when and where such meetings shall be held and rules for procedure therein. Section 4785-63, General Code, provides that the outgoing committee shall determine whether the representation on the central committee shall be by wards and townships or by precincts. It fails to stipulate when that action shall be taken.

The relator contends that in the absence of legislative enactment the common-law rule as to quorums prevails, and relies upon the following cases, among others: *Heiskell* v. *Mayor, etc., of Baltimore,* 65 Md., 125, 4 A., 116, 57 Am. Rep., 308; *United States* v. *Ballin,* 144 U. S., 1, 7 (1892), 36 L. Ed., 321, 12 S. Ct., 507; *State, ex rel. Cline,* v. *Wilkesville Township,* 20 Ohio St., 288, 293 (1870). The first two of those cases have to do with legislative assemblies and the last one with township trustees. They are not in point. They deal with public offices. We are not dealing here with a public office, but with a party committee whose functions are entirely different. The argument of the relator really is that, there being no statutory provision as to what constitutes a quorum, the common law rule that all must be present to constitute a quorum prevails. We reject that proposition as well as the alternate contention that a majority must in any event be present to constitute a quorum in an organization of this type.

Various voluntary associations such as fraternal organizations do, by their rules and regulations and by-laws, fix a quorum at far less than a majority of the

members and their right so to do is not questioned. Various forms of organizations at town meetings can and do take action by a majority of those actually present. The Legislature, in Section 4785-63, General Code, has provided that each central committee shall elect an executive committee and has provided for the delegation of power to that committee. Frequently the entire power of the central committee is delegated to the executive committee and the executive committee can and does delegate its power, in whole or in part, to the chairman thereof. This practice of delegation of power by central committees has been recognized by the courts of this state as not illegal but authorized. The delegation of power by a central committee to an executive committee would be no more against public policy than to fix a smaller quorum for the transaction of business of a central committee which is in reality a delegation of power. *Fifty West Broad, Inc.,* v. *Poulson,* 75 Ohio App., 194, 58 N. E. (2d), 483; *State, ex rel. Humker,* v. *Hummel,* 143 Ohio St., 604, 56 N. E. (2d), 167.

It has also been determined that rules of parliamentary practice and procedure are not necessary to be followed in all cases by party committees. In the case of *State, ex rel. Culbert,* v. *Kinney,* 63 Ohio St., 304, 58 N. E., 809, it was held that a recommendation required of the committee need not be made at a regular meeting but could be signed by the members thereof individually elsewhere.

The case of *Smith* v. *Gannon,* in the Court of Appeals for Lawrence county, is unreported but we have been furnished a copy of the pleadings and entries therein. Its facts are almost identical with the facts in the instant case except that there the action taken under Section 4785-63, General Code, was by the executive committee. The action was sustained and the writ denied.

It is our conclusion that, in the absence of a statutory provision to the contrary, the county central committee had a right to provide rules for its own procedure including a rule that less than a majority of the committee would constitute a quorum.

Such a rule having been adopted at the meeting of December 4th at which meeting a majority was present, the rule was binding and valid.

It is, likewise, our conclusion that the statute being silent as to when the outgoing committee should act in determining the basis of representation on the committee, this court will not so determine. It is a matter of party policy to be settled within the party by the members thereof.

As to whether the 109 petitions accepted by the board of elections were invalid because they were circulated and acknowledged prior to the adoption of the resolution of February 6th and its filing with the board of elections, we hold that those petitions speak from the time they were filed and were valid.

It follows that the members of the board of elections, the respondents, did not act arbitrarily nor did they misinterpret the law.

It is also our opinion that section two of amended Substitute Senate Bill No. 216, providing for the filing of a written protest is applicable hereto. However, in view of our conclusions as above stated and in view of the fact that the board of elections did give full hearings on the verbal protests in which the same questions were considered as would have been considered on a written protest, we prefer not to place our decision upon that ground.

It follows that the writ must be and is denied.

*Writ denied.*

SHERICK, P. J., and MONTGOMERY, J., concur.