[Cite as *Ohio House Republican Alliance v. Stephens*, 2024-Ohio-3416.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ohio House Republican Alliance et al., | : | |
| Plaintiffs-Appellees, | : | No. 24AP-393 |
| | | (C.P.C. No. 23CV-7202) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Jason Stephens et al., | : | |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on September 5, 2024

**On brief:** *Murray Murphy Moul + Basil LLP*, *James B. Hadden*, *Joseph F. Murray*, and *Brian K. Murphy*, and *James R. Staley*, for plaintiffs-appellees Ohio House Republican Alliance and Phil Plummer.

**On brief:** *Lisa Ferguson*, for plaintiffs-appellees Ohio House Republican Alliance, Phil Plummer, Derek Merrin, and Ronald Ferguson.

**On brief:** *Baker & Hostetler LLP*, and *Robert J. Tucker*; *Baker & Hostetler LLP*, and *Trevor Stanley*; and *Baker & Hostetler LLP*, and *Rachel Palmer Hooper*, for defendants-appellants.

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} Defendants-appellants, Jason Stephens ("Representative Stephens"), J. Matthew Yuskewich ("Yuskewich"), Winterset CPA Group, Inc. ("Winterset"), and Jeff LaRe ("Representative LaRe") (collectively "appellants"), appeal from an order of the Franklin County Court of Common Pleas granting a preliminary injunction that enjoins them from operating or otherwise making expenditures or transfers of funds from the Ohio

House Republican Alliance ("OHRA") Legislative Campaign Fund ("LCF") for the pendency of this case. The preliminary injunction also enjoined appellants from taking any action contrary to a resolution purportedly adopted on April 10, 2024 by plaintiffs-appellees OHRA, Phil Plummer ("Representative Plummer"), Derek Merrin ("Representative Merrin"), and Ronald Ferguson (collectively "appellees").

## I. Facts and Procedural History

{¶ 2} On October 7, 2023, appellees filed a complaint that sought a declaratory judgment permitting OHRA to be administered only by appellees, not appellants, and accused appellants of tortiously harming appellees and others by making unauthorized expenditures from OHRA accounts. Representative Stephens was elected speaker of the Ohio House of Representatives on January 3, 2023. Yuskewich, the current treasurer of the OHRA fund and a certified public accountant at Winterset, attested that he received a letter from Representative Stephens on January 5, 2023 instructing that any expenditures from OHRA must be authorized by both Representatives Stephens and LaRe. At this time, Yuskewich had not received any communication from appellees concerning OHRA. The complaint alleged that on January 21, 2023, Representatives Merrin and Bill Dean invited Republican members of the House of Representatives to a meeting held in a Columbus restaurant. At that meeting, the complaint claims the members held two votes: one for leadership of the House Republican caucus, and another for control of the OHRA fund. Appellees claim the votes unanimously placed Representatives Merrin and Plummer in charge. Representative Stephens, however, refused to accept the results of the January 24, 2023 votes. Yuskewich in his affidavit claimed Winterset received nothing challenging appellants' control of OHRA until September 27, 2023, when he received a letter from appellees' counsel. As noted, appellees soon thereafter filed their complaint on October 7, 2023.

{¶ 3} On October 27, 2023, appellants filed a motion to dismiss the complaint, arguing: (1) control over OHRA is a nonjusticiable political question, and (2) appellees failed to state a valid claim for tortious interference with a business relationship. On February 1, 2024, appellees filed a motion for temporary restraining order and preliminary injunction. The trial court entered an order denying appellees' motion for temporary restraining order on February 14, 2024, reasoning appellees failed to establish they would be likely to succeed on the merits because the January 24, 2023 meeting provided caucus

members insufficient notice and resulted in ambiguous vote tallies. The trial court then informed appellees it would likely "enforce the statute," i.e., transfer control of OHRA from appellants to appellees, if appellees provided due process notice and made a clear record of a majority vote in their favor. (Feb. 14, 2024 Order at 3.)

{¶ 4} Representative Marilyn John ("Representative John") filed an affidavit in which she attests appellees held another meeting on April 10, 2024. John Wesley Farno in his own affidavit claimed he, on behalf of Representative Plummer, provided notice of the April meeting by sending emails to all members of the House Republican caucus and to the Ohio Republican party chairman on April 5, 2024. Representative John served as the clerk for the meeting and documented a roll call vote on a resolution to name Representative Plummer the chair of OHRA. The resolution passed by a vote of 39-0.

{¶ 5} On April 25, 2024, appellees filed a motion for preliminary injunction, highlighting their compliance with the trial court's recommended meeting notice and vote documentation. On June 14, 2024, appellants filed a memo contra appellees' motion for preliminary injunction, again noting the dispute was "just a political fight" and therefore a nonjusticiable political question. (Appellants' Memo Contra at 2.) The trial court held a preliminary injunction hearing on June 21, 2024. At the hearing, the trial court orally granted appellants' motion to dismiss as to the claim of tortious interference with a business relationship. The trial court next discussed whether the case presented a nonjusticiable political question by reference to a number of cases, including *DeRolph v. State*, 78 Ohio St.3d 193 (1997). It eventually deemed the present case justiciable because of the existence of R.C. 3517.10, noting that judicial inaction "would frustrate the intent and purpose of the statute" because "[w]e're at a stalemate"; "[t]he [c]ourt has to do something or it will never get resolved." (Tr. at 38.) The trial court then orally overruled the remainder of appellants' motion to dismiss and granted appellees' motion for preliminary injunction. The same day, June 21, 2024, the trial court entered a written order reflecting its oral pronouncements, enjoining appellants for the pendency of the litigation from "making expenditures" from OHRA, operating OHRA "in any manner," and otherwise taking any action contra the resolution passed by appellees on April 10, 2024. (June 21, 2024 Order at 2.)

{¶ 6} On June 25, 2024, appellants filed a notice of appeal. On July 9, 2024, appellants filed a motion to stay the preliminary injunction pending appeal and to expedite the appeal. This court granted both motions.

## II. Assignment of Error

{¶ 7} Appellants assign the following sole error for our review:

> The trial court erred in granting Plaintiffs'/Appellees' motion for a preliminary injunction. Specifically, the trial court erred in finding that Plaintiffs/Appellees were likely to succeed on the merits because this was a non-justiciable political dispute over which the trial court lacked jurisdiction and further erred in recognizing the validity of the alleged caucus vote on April 10, 2024 to elect Rep. Plummer as "Chair" of OHRA. The trial court also erred in finding that Plaintiffs/Appellees would suffer irreparable harm and that the equities favored granting the injunction. Finally, assuming the trial court's preliminary injunction transferred control of OHRA to Rep. Plummer then it improperly disposed of this case on the merits absent full discovery and a hearing.

## III. Analysis

{¶ 8} The threshold issue before us is whether the trial court's order granting a preliminary injunction is a final appealable order. *See*, *e.g.*, *Columbus v. State*, 10th Dist. No. 22AP-676, 2023-Ohio-195, ¶ 6-8. According to R.C. 2505.02(B)(4), an order is final if it:

> [G]rants or denies a provisional remedy and to which both of the following apply:
>
> (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
>
> (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.
>
> Thus, in order for R.C. 2505.02(B)(4) to apply, a court must first find that the order in question grants or denies a provisional remedy, and then must determine whether the order meets the two-part test in R.C. 2505.02(B)(4)(a) and (b).

*Columbus* at ¶ 8.

{¶ 9}  A preliminary injunction is a provisional remedy.  R.C. 2505.02(A)(3).  The order in the present case granting a preliminary injunction thus satisfies the threshold requirement of R.C. 2505.02(B)(4).  We also note that although an order ordinarily must meet the Civ.R. 54(B) requirements to constitute a final order, provisional remedies such as preliminary injunctions are not subject to the rule "because a 'provisional remedy is a remedy other than a claim for relief.' " *Columbus* at ¶ 9, quoting *State ex rel. Butler Cty. Children Servs. Bd. v. Sage*, 95 Ohio St.3d 23, 25 (2002), citing *Bob Krihwan Pontiac-GMC Truck, Inc. v. Gen. Motors Corp.*, 141 Ohio App.3d 777, 781-82 (10th Dist.2001).

{¶ 10}  Next, R.C. 2505.02(B)(4)(a) asks whether the trial court's order determines the action with respect to the preliminary injunction and prevents a judgment on the preliminary injunction in favor of appellants.  In other words, "[a]n order satisfies R.C. 2505.02(B)(4)(a) if 'there exist[s] nothing further for the trial court to decide with respect to the provisional remedy.' " *R.L.R. Invests. L.L.C. v. Cross St. Partners L.L.C.*, 2d Dist. No. 30034 (Mar. 11, 2024), quoting *In re Special Docket No. 73958*, 115 Ohio St.3d 425, 2007-Ohio-5268, ¶ 29.  The trial court's order fully grants the provisional remedy and thereby forecloses appellants' ability to receive a favorable judgment on the preliminary injunction.  The order therefore satisfies R.C. 2505.02(B)(4)(a).

{¶ 11}  Lastly, R.C. 2505.02(B)(4)(b) requires appellants to demonstrate they would not be afforded a meaningful or effective remedy absent an immediate appeal.  "[T]he question of 'whether [an] appeal after final judgment would afford a meaningful or effective remedy' requires examining more than the relief sought: a court must 'consider whether there is a harm such that appeal after final judgment would not "rectify the damage." ' " *State ex rel. Bowling v. DeWine*, 10th Dist. No. 21AP-380, 2021-Ohio-2902, ¶ 26, quoting *In re D.H.*, 152 Ohio St.3d 310, 2018-Ohio-17, ¶ 18, quoting *State v. Muncie*, 91 Ohio St.3d 440, 451 (2001), quoting *Gibson-Myers & Assocs., Inc. v. Pearce*, 9th Dist. No. 19358 (Oct. 27, 1999).  Appellants primarily contend by the time the trial court proceedings conclude, the election will be either imminent or already past.  Either way, appellants assert, it would be too late; OHRA funds were raised for the explicit purpose of supporting the campaigns of House Republican candidates, a task which cannot be meaningfully accomplished so late in the election cycle.  Appellees do not contest this litigation's proximity to the election, but they note the present dispute over control of OHRA would

remain relevant notwithstanding the 2024 election. R.C. 2505.02(B)(4)(b), however, concerns the remedy available to the appealing party, not the general relevance of the underlying dispute. Whatever appellees believe to be the greater import of this ruling regarding OHRA or the other LCFs, our role is to examine whether appellants could attain a meaningful or effective remedy from the trial court if the case were to be resolved, at the earliest, just before the election. *See* R.C. 2505.02(B)(4)(b). We conclude appellants would be denied such a remedy even if they were ultimately successful in the trial court. Representatives are elected once every two years, rendering any one representative's control of the fund transitory and contingent on the next election cycle. Insofar as appellants are concerned, then, the only effective relief would be to regain access to OHRA funds with enough time to make expenditures in support of candidates currently running for office. Given the trial court's acknowledgement "[t]he election cycle could be over before the final outcome of this case," appellants' only means of an effective remedy is by the present appeal. (Tr. at 40.)

{¶ 12} Thus, the trial court's order satisfies all elements of R.C. 2505.02(B)(4), and we accordingly find the trial court's order granting appellees' motion for preliminary injunction to be a final appealable order. We now turn to the merits of this appeal.

{¶ 13} In their sole assignment of error, appellants assert the trial court erred in granting the motion for preliminary injunction in part due to the initial error of finding appellees were likely to succeed on the merits. A trial court considering if a preliminary injunction is warranted begins by determining "whether the evidence presents a substantial likelihood that the plaintiff will prevail on the merits." *Ohio Democratic Party v. LaRose*, 10th Dist. No. 20AP-432, 2020-Ohio-4778, ¶ 34, citing *Cuyahoga Re-Entry Agency v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-740, 2012-Ohio-2034, ¶ 31, and *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co., Gen. Commodities Div.*, 109 Ohio App.3d 786, 790 (10th Dist.1996). Appellants argue appellees could not succeed on the merits because the case presents a nonjusticiable political dispute. While we typically review the trial court's grant of a preliminary injunction for a "clear" abuse of discretion, we nevertheless review questions of law de novo. *See Ohio Democratic Party v. LaRose*, 10th Dist. No. 20AP-421, 2020-Ohio-4664, ¶ 33, citing *Escape Ents., Ltd. v. Gosh Ents., Inc.*, 10th Dist. No. 04AP-834, 2005-Ohio-2637, ¶ 22, and *Intralot, Inc. v. Blair*, 10th

Dist. No. 17AP-444, 2018-Ohio-3873, ¶ 30.  Here, as a jurisdictional matter, we review de novo whether the present case poses a nonjusticiable political question.

{¶ 14} "The nonjusticiability of a political question is primarily a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 210 (1962).  The United States Supreme Court has "set forth six independent tests for the existence of a political question:"

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of the government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Vieth v. Jubelirer*, 541 U.S. 267, 277-78 (2004), quoting *Baker* at 217.  "These tests are probably listed in descending order of both importance and certainty." *Vieth* at 278.  The second and fourth tests are most applicable here.

{¶ 15} OHRA is a legislative campaign fund, meaning it is "authorized to receive contributions and make expenditures for the primary purpose of furthering the election of" Republican candidates for the Ohio House of Representatives.  R.C. 3517.10(D)(3)(d).  The statute prescribes "[e]ach legislative campaign fund shall be administered and controlled in a manner designated by the caucus."  R.C. 3517.10(D)(3)(d).  " 'Caucus' means all of the members of the house of representatives * * * of the general assembly who are members of the same political party."  R.C. 3517.01(C)(14).  All the representatives who are party to this case, appellants and appellees alike, are members of the Ohio House Republican caucus.  There are no allegations that either side would inappropriately provide OHRA funds to any candidate other than those seeking to serve as Republicans in the Ohio House.  Yet still they disagree over which faction of their caucus should control OHRA's funds.

{¶ 16} In its oral pronouncement granting appellees' motion for preliminary injunction,[1] the trial court indicated it "makes common sense that a majority of the caucus meets and decides" which party controls and administers OHRA. (Tr. at 37.) The trial court appeared sympathetic to the basic tenet that "the majority rules" because "[t]hat's democracy." (Tr. at 14.) Appellants take umbrage at this use of a "common sense" standard, maintaining that standard lacks any statutory basis. Indeed, R.C. 3517.10 is silent on what it means for an LCF to be "designated by the caucus." Regardless of whether it was common sense for the trial court to assume a "majority rules" governance structure on behalf of the caucus, common sense alone does not automatically grant jurisdiction. It is not a court's prerogative to set such rules. Courts are not hall monitors duty-bound to intervene in every political squabble. Rather, Ohio courts are vested with "the judicial power of the state," Ohio Constitution, Article IV, Section 1, and a limitation inherent in that power "is that judicial action must be governed by *standard*, by *rule*." (Emphasis sic.) *Vieth* at 278. All the statute tells us is the caucus must be in control of its LCF—but that advances the analysis only so far. Both appellants and appellees are members of the House Republican caucus, both with competing claims to lead the caucus. Appellees asked, and the trial court agreed, to establish a presumption of majority rule in the internal governance of the Ohio House Republicans, all without any perceptible statutory permission. In addition, when it denied appellees' initial motion for temporary restraining order, the trial court advised appellees it would likely rule in their favor if the caucus provided due process notice prior to meetings and formal documentation of votes—inexplicably establishing rules the caucus itself never formally adopted. We find no statutory authority for such an imposition. The trial court exceeded the standard- and rule-based judicial power conferred by the Ohio Constitution. Because such interference in the granular operations of a

---

[1] In analyzing the political question doctrine during this hearing, the trial court erred in relying on *DeRolph*. The trial court found *DeRolph*'s reasoning bolstered the justiciability of this case merely because a statute is involved. On this point, we adamantly disagree. In *DeRolph*, the Supreme Court of Ohio ruled that given the Ohio Constitution's demand that "[t]he General Assembly shall make such provisions, by taxation, or otherwise, as * * * will secure a thorough and efficient system of common schools throughout the State," the court could exercise its jurisdiction in striking down as unconstitutional the state's school financing system. Ohio Constitution, Article VI, Section 2; *DeRolph* at 198. We reject the trial court's overbroad application of *DeRolph*, for it is incompatible with the case now before us. *DeRolph* dealt with a unique constitutional question; here, the case centers on the application of a statute related to LCFs in the General Assembly. *DeRolph* involved a statewide school financing policy; here, appellants and appellees clash over an intraparty rift in the legislative branch.

legislative caucus exhibits "a lack of judicially discoverable and manageable standards," we are obligated to find this case nonjusticiable. *Baker* at 217.

{¶ 17} Perhaps more fundamentally, "[t]he courts of the United States have had a long history of not interfering in the internal affairs of [political] parties." *State ex rel. McCurdy v. DeMaioribus*, 9 Ohio App.2d 280, 281 (8th Dist.1967). "[P]olitical parties are voluntary organizations and in the absence of legislative enactment they are governed by their own usages and establish their own rules." *State ex rel. Pfeifer v. Stoneking*, 80 Ohio App. 70, 74 (5th Dist.1946). As previously noted, R.C. 3517.10(D)(3)(d) states each caucus controls its own LCF, yet the law decidedly does not expound on the intricacies of governing a caucus. Thus, for our purposes, the statute is entirely neutral as to whether appellants or appellees have the better claim to represent the caucus in administering OHRA. Without any statutory directive, the present dispute necessarily becomes "a matter of party policy to be settled within the party by the members thereof." *Id.* at 77. The political question doctrine "is designed to restrain the Judiciary from inappropriate interference in the business of the other branches of Government." *United States v. Munoz-Flores*, 495 U.S. 385, 394 (1990). Taking jurisdiction of this case would be to presume the judicial branch could interpose itself into an intraparty division within the legislative branch based merely on the existence of a statute that, while generally on point, does not under any plausible interpretation resolve the dispute. It would therefore be "impossib[le]" for this court to enter judgment on the merits "without expressing lack of the respect due coordinate branches of government." *Baker* at 217. Accordingly, this case presents a nonjusticiable political question over which we may not claim jurisdiction.

{¶ 18} Because at least two of the *Baker* tests underlying the political question doctrine are "inextricable from the case at bar," we are obligated to dismiss this case as nonjusticiable. *Baker* at 217; *see, e.g.*, *Vieth* at 306 ("We * * * decline to adjudicate these political gerrymandering claims."); *Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir.2008) ("Invocation of the political question doctrine implicates the district court's jurisdiction."); *Harbury v. Hayden*, 522 F.3d 413, 421 (D.C.Cir.2008) ("[W]e must dismiss Harbury's claims based on the political question doctrine."). We thus find the trial court erred in failing to dismiss this case as a nonjusticiable political question. Accordingly, we sustain appellants' sole assignment of error insofar as it argued the trial court lacked jurisdiction pursuant to the political question doctrine.

## IV.  Conclusion

{¶ 19}  Having sustained appellants' sole assignment of error to the extent it asserted this case presents a nonjusticiable political question, we vacate the order of the Franklin County Court of Common Pleas granting appellees' motion for preliminary injunction and dismiss this case.

*Order granting preliminary injunction vacated*;
*case dismissed.*

MENTEL, P.J., and EDELSTEIN, J., concur.

———————————